**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| In re UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Sub-Master Docket No. 17-9001L |
| | Judge Charles F. Lettow |
| THIS DOCUMENT APPLIES TO: ALL UPSTREAM CASES | |

**PLAINTIFFS' MOTION TO COMPEL THE GOVERNMENT
TO ANSWER INTERROGATORIES 20, 21, 23, AND 24**

Plaintiffs served nine (9) interrogatories on the government requesting information relevant to the issue of just compensation now before the Court. The government did not provide a substantive response to any request. Instead, the government served a litany of objections to each request, many of them duplicative.[1] Plaintiffs ask that this Court overrule the government's objections to four (4) of the interrogatories and compel the government to provide substantive responses to the requests in accordance with RCFC 33.

## I.   AUTHORITY

RCFC 26(b) establishes a broad scope of discovery, which includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." To that end, written interrogatories "may relate to any matter that may be inquired into under RCFC 26(b);" and an interrogatory is not objectionable "merely because it asks for an opinion or contention that relates to fact or the application of law to fact." RCFC 33(a)(2). This Court has stated that responding parties "must provide true, explicit, responsive, complete, and candid answers . . . directly and without evasion in accordance with information that [the] party possesses after due inquiry." *Lakeland Partners, L.L.C. v. United States*, 88 Fed. Cl. 124, 132 (2009).

---

[1] The government's responses to Plaintiffs' Third Set of Interrogatories are attached as Exhibit A.

Instead of complying with its discovery responsibilities, the government fielded a series of objections as to which it now bears the burden to prove their application and sufficiency to overcome the "generally liberal treatment" this Court has given to the discovery rules. *Hardy v. United States*, 130 Fed. Cl. 406, 408 (2017). The government cannot meet its burden.

## II.   ARGUMENT

None of the government's objections provide a valid basis to avoid answering. Rather, the unfounded objections serve as the government's attempt to preclude Plaintiffs from obtaining the requested information, which is "reasonably necessary to afford a fair opportunity to develop and prepare [their] case." *Herrmann v. United States*, 127 Fed. Cl. 22, 40 (2016).

**A.   Interrogatory Nos. 20, 21, and 23.**

First, Plaintiffs request this Court compel the government to answer Interrogatory Nos. 20, 21, and 23.[2] To each of these requests, the government made these same objections:

---

[2] Interrogatory Nos. 20, 21, and 23 are set out for the Court's convenience:

> INTERROGATORY NO. 20. If you contend that the Test Property Plaintiffs are <u>NOT</u> entitled to Just Compensation for (1) the temporary, categorical, physical taking resulting from the Government-Induced Flooding, and/or (2) the permanent, categorical, physical taking for the destruction of plaintiffs' personal property resulting from the Government-Induced Flooding, please identify any factual and legal bases that support your contention. To the extent that you contend the answer differs between Test Property Plaintiffs, please answer separately for each Test Property Plaintiff and identify any factual and legal bases that support your contention.
>
> INTERROGATORY NO. 21. Do you contend that any of the following should be excluded from the award of Just Compensation owed to each Test Property Plaintiff? If so, please identify any portion you contend should be excluded and provide any factual and legal bases supporting such contentions. To the extent that you contend the answer differs between Test Property Plaintiffs, please answer separately for such Test Property Plaintiff and identify any factual and legal bases that support your contention:
>
>    a.  The cost to replace any Real Property destroyed due to the Government-Induced Flooding.
>
>    b.  The cost to repair any Real Property damaged due to the Government-Induced Flooding.

c. The cost to replace any Structure destroyed due to the Government-Induced Flooding.

d. The cost to repair any Structure damaged due to the Government-Induced Flooding.

e. The cost to replace any Landscaping destroyed due to the Government-Induced Flooding.

f. The cost to repair any Landscaping damaged due to the Government-Induced Flooding.

g. The cost to replace any Fixture destroyed due to the Government-Induced Flooding.

h. The cost to repair any Fixture damaged due to the Government-Induced Flooding.

i. The cost to replace Personal Property destroyed due to the Government-Induced Flooding.

j. The cost to repair Personal Property damaged due to the Government-Induced Flooding.

k. The diminution in value of Real Property due to the Government-Induced Flooding.

l. The diminution in value of Structure due to the Government-Induced Flooding.

m. The diminution in value of Landscaping due to the Government-Induced Flooding.

n. The diminution in value of Fixture due to the Government-Induced Flooding.

o. The diminution in value of Personal Property due to the Government-Induced Flooding.

p. The cost of inspections to evaluate the extent of damage sustained due to the Government-Induced Flooding and/or the cost of estimating the repairs needed to fix such damage.

q. The cost of securing alternative dwelling if the Government-Induced Flooding resulted in the displacement of a Test Property Plaintiff.

r. The cost of moving personal property if the Government-Induced Flooding necessitated moving or storing such personal property.

s. Compensation for the taking of a permanent flowage easement in connection with the Government-Induced Flooding.

t. Compensation for the taking of a temporary flowage easement in connection with the Government-Induced Flooding.

u. Compensation for temporary loss of access to all or part of the Test Property due to the Government-Induced Flooding.

(a) that the request was "improper" because "the selection of the appropriate standard by which just compensation will be determined is a question of law to be decided by the Court," and that the request "improperly asks the United States to disclose its legal analysis on this question of law;"

(b) that the request was "premature" since fact discovery is ongoing and "Plaintiffs have not yet produced relevant documents requested by the United States and depositions of the Plaintiffs, which also require that production, have not yet taken place;" and

(c) that the government would rely on its experts regarding these matters, that a schedule for expert discovery has not yet been set, and that the "legal bases for the United States' position on how just compensation should be calculated <u>will be addressed</u> by the United States in its pre-trial memorandum of contentions of fact and law in accordance with the pre-trial schedule established by the Court."

But the requests are neither premature nor dependent on any factual disclosure or evidence from Plaintiffs. In sum, Interrogatory No. 20 asks whether the government agrees that this phase of the litigation includes assessing the compensation owed for all Plaintiffs' property losses suffered as a consequential result of the government's actions when it took a physical, permanent, non-categorical flowage easement over their property. Likewise, Interrogatory No. 21 asks whether the government will instruct its experts to include or exclude certain of the "sticks" in Plaintiffs' bundle of rights when appraising Plaintiffs' properties. And Interrogatory No. 23 seeks information relevant to this compensation phase of the litigation: whether the government will instruct its experts to apply any offset(s) in their opinion regarding compensation and if so, which ones and how much for each.

Nor are any of these requests premature. The Court is currently assessing what compensation should be awarded each Damages Test Property Plaintiff and these requests seek information from

---

INTERROGATORY NO. 23. If you contend the award of Just Compensation due to each Test Property Plaintiffs should be reduced, offset, or setoff for any reason, please identify each reason and provide any factual and legal bases supporting your contentions, including the amount by which the award of Just Compensation due to any Test Property Plaintiff should be reduced, offset, or setoff, and also identifying the corresponding reason. To the extent that you contend the answer differs between Test Property Plaintiffs, please answer separately for such Test Property Plaintiff and identify any factual and legal bases that support your contention(s).

4

the government regarding the parameters it asserts apply to that determination. *Am. Oil Co. v. Pennsylvania Petroleum Prod. Co.*, 23 F.R.D. 680, 683 (D.R.I. 1959) (stating that an interrogatory is not subject to objection merely because it calls for matters of opinion or contention, "The real test should be whether or not an answer thereto would serve any substantial purpose, either in leading to evidence or in clarifying the issues in the case." (citations omitted)).[3] Plaintiffs should not be required to wait until the eleventh hour—when the government files a pre-trial memorandum—to discover defendant's position on these issues.

Nor are the requests objectionable because they seek "legal conclusion" or may be answered in connection with consultation with the government's experts. It is indisputable that the government's experts must provide their valuation opinions in accordance with the UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS (Interagency Land Acquisition Conference 2016, cited as the "YELLOW BOOK"). *Technical College of the Low Country v. United States*, 145 Fed. Cl. 408, 426 (2019) (noting that the YELLOW BOOK provides "[t]he approach that government appraisers must follow in opining on the value of land taken by the federal government," and has routinely been cited as providing the definitive guidance for appraisals in federal takings cases); *Sears v. United States*, 132 Fed. Cl. 6, 12 n.8 (2017) (noting that the YELLOW BOOK "sets forth the standards and methods to be applied in appraisals of land acquired by the federal government").

And it is the YELLOW BOOK which confirms it is the duty of <u>the government</u> to provide <u>to the expert</u> the information sought in these interrogatories, including the property interests lost by the

---

[3] While the *American Oil* court was applying Federal Rule of Civil Procedure 33, its analysis serves as guidance for application of RCFC 33. *See* 2002 Note by the Rules of the Advisory Committee on the Rules of the United States Court of Federal Claims ("In the 2002 revision, the court has endeavored to create a set of rules that conforms to the Federal Rules of Civil Procedure as amended through November 30, 2001, to the extent practicable given differences in jurisdiction between the United States district courts and the United States Court of Federal Claims. Consistent with this objective, interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure.").

Plaintiffs from the taking as opposed to those which remain with the property owner. *See* YELLOW BOOK at 11 ("It is the responsibility of the acquiring agency to provide the appraiser with an accurate description of the property interest(s) to be appraised in each assignment."); *id.* ("The appraiser must fully understand the nature of the estate(s) to be acquired, and request legal instructions if clarification is needed, for each assignment."). As the YELLOW BOOK directs, in inverse condemnation cases "Government's trial counsel must determine *what* is to be measured, while the appraiser determines *how* to measure it." *Id.* at 50 (emphasis in original).[4] Nor is it sufficient for the government to point to its experts as the source of this information or these determinations. *See, e.g.*, YELLOW BOOK at 16 ("Simply directing appraisers to follow these Standards is not a sufficient legal instruction for purposes of the scope of the project rule.").[5]

Finally, the Court should also reject the additional objection made to Interrogatory No. 23, that "the question of whether government payments or other benefits provided to Plaintiffs that are related to Hurricane Harvey flooding and flood damage should be taken into account as offsetting benefits in the determination of just compensation depends on the measure and components of just compensation requested by Plaintiffs." Exhibit A, Government Response at 12.

The legal question of whether this Court will ultimately apply any offset to a Plaintiff's requested compensation is <u>not</u> what the interrogatory seeks; rather, it seeks revelation of the instruction(s) the government is giving to its experts along with (if applicable) that amount of any such

---

[4] *See also id.* at 3 ("Appropriate legal instructions can resolve doubt about the proper method of valuation or the application of particular rules to specific factual situations."); *id.* at 4 (noting that "some valuation problems require nuanced legal instructions to address complicated or undecided questions of law); *id.* at 14 ("Examples of situations in which a legal instruction may be required include: … compensability of damages questions ….").

[5] The scope of the project rule requires the appraiser to determine whether, and to what extent, any change in property value is attributable to the government's public project.

6

offset as determined by the government (not the expert) when <u>the government</u> applies the facts of each Plaintiff's circumstance to how it interprets applicable law.

Again, the YELLOW BOOK confirms that it is <u>the government</u> which must provide instructions(s) <u>to the expert</u> regarding any special, hypothetical, or limiting conditions apply to their work:

> In developing an appraisal under these Standards, appraisers must understand the special assignment conditions associated with the valuation of property being acquired by federal agencies. These special assignment conditions include the use of instructions, hypothetical conditions, extraordinary assumptions, and jurisdictional exceptions from USPAP as well as the special rules and methods required in these appraisals. <u>Application of these Standards may require instructions from the acquiring agency</u>.

YELLOW BOOK at 12-13 (emphasis added). Likewise, the importance of understanding the instructions that the government is giving to its appraisers and valuation experts is critical in this inverse condemnation case. *See* YELLOW BOOK at 43 ("Because inverse condemnation cases (either permanent or temporary) are very fact-specific, it is essential that the appraiser work very closely with the Department of Justice attorney assigned to the case. Both appraiser and attorney must understand the precise question that must be addressed by the appraiser and the acceptable methodology to be used to answer it. This will often involve substantial legal research by the attorney, <u>concluding with written legal instructions to the appraiser</u>." (emphasis added)).

These interrogatories "which seek opinions or contentions that call for the application of law to facts are proper." *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006). As the *Moses* court noted, "such interrogatories are helpful in that they may narrow and define the issues for trial and enable the propounding party to determine the proof required to rebut the responding party's claim or defense." *See also Diversified Products Corp. v. Sports Center Co.*, 42 F.R.D. 3 (D. Md. 1967) ("As the Advisory Committee Note reflects as to requests for opinions or contentions, if the [interrogatory] answer might

serve some legitimate purpose, either in leading to evidence or in narrowing the issues, without unduly prejudicing the interrogated party, the court should require an answer.").

Because none of the requests is premature or seeks information that must (or should) await development by or revelation from any expert, the government cannot carry its burden, its objections should be overruled, and substantive responses compelled to Interrogatory Nos. 20, 21, and 23.

**B.     Interrogatory No. 24.**

Plaintiffs also request this Court compel the government to answer Interrogatory No. 24,[6] to which the government made the following objections:

> The United States objects to Interrogatory No. 24 as vague in that the interrogatory does not define the term "Uniform Relocation assistance benefits," nor is that term defined in the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601 – 4655 ("URA"). Subject to these objections, the United States responds that, if final judgment is entered in favor of the Test Property Plaintiffs, then they may be eligible to seek reimbursement of "reasonable costs, disbursements, and expenses" actually incurred under 42 U.S.C. § 4654(c). There is no other waiver of sovereign immunity contained in the URA that allows the Court of Federal Claims to award other undefined "benefits" to the Test Property Plaintiffs in this case. The United States further contends that ER 405-1-16, by its terms, does not apply to the Test Property Plaintiffs' Fifth Amendment takings claims against the United States.

First, the request is not vague regarding the term "Uniform Relocation assistance benefits;" the term has been used and interpreted in prior cases by both courts <u>and</u> the government in prior cases. *See, e.g.*, *Berberich v. United States*, 5 Cl. Ct. 652, 659 (1984), *aff'd*, 770 F.2d 179 (Fed. Cir. 1985) (assessing whether the failure to pay "business relocation benefits" violated the Act), *Lowell v. Sec'y of Dep't of*

---

[6] The interrogatory reads:

> INTERROGATORY NO. 24. If you contend that any Test Property Plaintiff is ineligible to receive Uniform Relocation Assistance benefits, as defined and directed by the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 and/or prescribed by ER 405-1-16, please identify any factual or legal bases supporting your contention(s). To the extent that you contend the answer differs between Test Property Plaintiffs, please answer separately for such Test Property Plaintiffs and identify any factual and legal bases that support your contention(s).

8

*Hous. & Urban Dev.*, 446 F. Supp. 859, 861 (N.D. Cal. 1977) (appeal of determination that plaintiffs "were improperly denied relocation assistance benefits when in anticipation of a proposed redevelopment project they relocated their business to premises outside the proposed project area").[7]

Second, the government's assertion that "ER 405-1-16, by its terms, does not apply to the Test Property Plaintiffs' Fifth Amendment takings claims" is again based on an application of that provision to these facts. Nowhere in ER 405-1-16 are these Plaintiffs' claims against the United States specifically precluded <u>by the terms</u> of the regulation. Therefore, it must be the application of that regulation to the facts, as understood by the government, which is sought—a legitimate inquiry. *Smith v. Bank of Am., N.A.*, No. CV146668DSFPLAX, 2019 WL 7188571, at *10 (C.D. Cal. Sept. 20, 2019) (requiring interrogatory response "explaining in detail . . . its general position as to why 26 U.S.C. § 6050H does not require it to report the specific payments that Plaintiffs believe should be reported"); *Morgan v. El Dorado Home Care Servs., LLC*, No. 1:16-CV-1007, 2016 WL 11477354, at *5 (W.D. Ark. Nov. 4, 2016) ("An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact."); *Anderson v. Werholtz*, No. 07-3275-EFM, 2009 WL 392673, at *1 (D. Kan. Feb. 17, 2009) (compelling response to interrogatory seeking litigant's position of application of statute based on facts of the case).

Again, because none of the proffered objections are valid, they should be overruled. And the Court should order the government to provide a substantive response to Interrogatory No. 24.

---

[7] Instruction 5 of the requests, to which no objection was lodged, stated "If you find the meaning of any term in these discovery requests unclear, you shall assume a reasonable meaning, state what the assumed meaning is, and respond according to the assumed meaning." The government failed to follow this portion of the requests and instead provided no substantive response. Moreover, if the government's position is that it cannot reach a sufficient understanding of the benefits contemplated by the Act, then it should not be permitted to take a position on whether any such undefinable benefits ought to be recovered.

### III.  CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request that the Court enter an order compelling the government to substantively answer Interrogatory Nos. 20, 21, 23, and 24 in accordance with RCFC 33.

Dated: May 22, 2020

Respectfully submitted,

/s/ *Daniel H. Charest*
Daniel H. Charest
Larry Vincent
Burns & Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com
*Co-Lead Counsel, Upstream Pre-Trial Discovery and Dispositive Motions*
*Co-Lead Counsel for Upstream Plaintiffs as to Jurisdictional Discovery, Motion to Dismiss, and Scheduling*

Charles Irvine
Irvine & Conner PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
charles@irvineconner.com
*Co-Lead Counsel, Upstream Pre-Trial Discovery and Dispositive Motions*

Edwin Armistead "Armi" Easterby
Williams Hart Boundas Easterby, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713-230-2200
aeasterby@whlaw.com
*Co-Lead Counsel, Upstream Pre-Trial Discovery and Dispositive Motions*

Vuk S. Vujasinovic
VB Attorneys, PPLC
6363 Woodway Dr., Suite 400
Houston, Texas 77057
713-224-7800
Vuk@vbattorneys.com
*Of Counsel for Upstream Plaintiffs as to Jurisdictional Discovery, the Government's Motion to Dismiss, and Scheduling*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certified that a true and correct copy of the foregoing instrument was served on all counsel of record in this Sub-Master Cause by filing it via the Court's ECF system on May 22, 2020.

*/s/ Daniel H. Charest*
Daniel H. Charest

## **CERTIFICATE OF CONFERENCE**

Pursuant to RCFC 37(a)(1), counsel for plaintiff certifies that he has, in good faith, conferred with the government in an effort to resolve this discovery dispute without court action. Despite these efforts, the parties are unable to resolve their dispute.

*/s/ Daniel H. Charest*
Daniel H. Charest
