IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| In re UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Sub-Master Docket No. 17-9001L |
| THIS DOCUMENT APPLIES TO: | Judge Charles F. Lettow |
| ALL UPSTREAM CASES | |

**UPSTREAM PLAINTIFFS' RESPONSE TO UNITED STATES' MOTION FOR A PROTECTIVE ORDER PRECLUDING DEPOSITIONS UNDER PLAINTIFFS' RULE 30(b)(6) DEPOSITION NOTICE**

Plaintiffs submit this response to the government's Motion for a Protective Order to completely prevent any 30(b)(6) corporate representative deposition during this damages phase. (ECF No. 291). For the reasons that follow, the government's motion should be denied.

### I.  LEGAL STANDARD

**A.  Standard for Discovery**

RCFC 26(b) establishes a broad scope of discovery, which includes "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "The scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial." *Osage Tribe of Indians of Oklahoma v. United States*, 84 Fed. Cl. 495, 496 (Fed. Cl. 2008) (citing *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1203 (Fed. Cir.1987). "Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Osage Tribe of Indians of Oklahoma*, 84 Fed. Cl. at 497; *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir.1984); see also *AG-Innovations Inc. v. United States*, 82 Fed. Cl. 69, 80 (Fed. Cl. 2008)("The decision to grant a motion to compel discovery . . ., like all questions of discovery, committed to the discretion of the court.") (citation omitted).

In deciding either to compel or quash discovery, the court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the

1

case. *Osage Tribe of Indians of Oklahoma*, 84 Fed. Cl. at 497. Discovery rules "are to be accorded a broad and liberal treatment," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947), and the court must, "[i]n deciding either to compel or quash discovery, . . . balance potentially conflicting goals," *Evergreen Trading, LLC ex rel. Nussdorf v. United States*, 80 Fed. Cl. 122, 126 (2007).

Additionally, it is within this Court's broad discretion to deny a motion for protective order. See *St. Mathew Publishing v. United States*, 41 Fed. Cl. 142, 145 (1998). The party moving for a protective order must show good cause for a protective order. R.C.F.C. 26(c); see *Forest Prods. Nw., Inc. v. United States*, 453 F.3d 1355, 1361 (Fed. Cir. 2006) ("Good cause requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." (citing *Capital Props., Inc. v. United States*, 49 Fed. Cl. 607, 611 (2001))). The movant "must make a particularized factual showing" that it will suffer harm if the Court does not issue a protective order. *A-G Innovations, Inc.*, 82 Fed. Cl. at 78 (*quoting* Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv. L. Rev. 427, 433 (1991)); *A-G Innovations*, 82 Fed. Cl. at 78 ("Broad allegations of harm, unsubstantiated by specific examples, are insufficient to justify issuance of a protective order." (citing *Forest Prods. Nw., Inc. v. United States*, 62 Fed. Cl. 109, 114 (2004))); *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 489, 492 (2008).

**B.     Rule 30(b)(6)**

RCFC 30(b)(6) affords parties the right to serve a deposition notice upon a business or governmental entity. The rule states:

> A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

RCFC 30(b)(6). The rule requires that the deposition notice describe the matters on which examination is requested with "reasonable particularity," RCFC 30(b)(6), and the governmental or business deponent has "an affirmative duty to make available persons who will be able to 'give complete, knowledgeable and binding answers' on its behalf." *Dairyland Power Coop. v. United States*, 79 Fed. Cl. 709, 714 (2007). This can be a burden, but the burden falls both on the requesting party as well as the designating party. "[T]he former must describe the matters on which testimony is sought with reasonable particularly, while the latter must produce at least one designee with knowledge about the subject matter contained in the deposition notice." *AG-Innovations, Inc.*, 82 Fed. Cl. at 81. However, "the burden upon such a responding entity is justified since a corporation can act only through its employees." *Id.* (quoting *ICE Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 U.S. Dist. LEXIS 42965, 2007 WL 1732369, at *4 (D. Kan. June 11, 2007)).

"Where there is doubt over relevance, [FRCP 26(b)(1)] indicates that the court should be permissive." *AG-Innovations, Inc.*, 82 Fed. Cl. at 86 (quoting *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1023 (Fed. Cir. 1986)).

## II.    ARGUMENT IN RESPONSE

### A.    The Discovery Requests are Material, Relevant, and Important to the Plaintiffs

Plaintiffs 30(b)(6) deposition notice identified its 49 topics with reasonable particularity and during the meet and confer, Plaintiffs attempted to reach a compromise with the government. However, because the government's main objections were so absolute—primarily going to blanket assertions of irrelevance, proportionality, and privilege—merely tweaking or narrowing the language of the topics requested would have proven futile.

As explained below, the government takes an impermissibly narrow view on the scope of discovery that renders it impossible for the Plaintiffs to adequately prepare for the just compensation trial. Indeed, Plaintiffs have been forced to file two motions to compel production and interrogatory

answers just to discover basic information. Without these documents and other information, Plaintiffs have been unable to determine much—if anything—about the government's claims and defenses to just compensation. If the government is compelled to produce the requested discovery, Plaintiffs may very well be able to greatly narrow and perhaps even withdraw some of the disputed 30(b)(6) topics. The government also seeks to strictly limit discovery to topics directly relevant to the six test properties to the exclusion of all else, forgetting that the whole purpose of using bellwether test properties to provide a factual basis for the disposition of the upstream cases. ECF No. 37, February 1, 2018 Case Management Order, at 2, ¶5.

1. **Testimony on Flowage Easements is necessary to determine just compensation**

Plaintiffs seek discovery from the government on those property rights it took, and those property rights retained by the Plaintiffs, as previously briefed to the Court. *See* ECF No. 281 at 8–10. Plaintiffs received a concession from the government that the flowage easements "do not preclude [the] current use or *any future lawful use* of the properties;" nor do they "prohibit the existing structures and other improvements on the subject properties, nor do they prohibit the construction of new structures and improvements in the future." ECF No. 280, Government Response and Reply Brief at 2 (emphasis added). But such carefully worded concessions from the government's counsel are unlikely to bind the government in the future. Plaintiffs have sought clarity with interrogatories and admissions, and now seek to bind the government through its designated 30(b)(6) witness, as is Plaintiffs' right under the Rules of this Court.

On April 30, 2020, this Court ruled on the geographic and vertical extent of the easement, as well as the date of take. ECF No. 283. The Court recognized other disputed matters "concerning the scope of rights reserved by the property owners and the scope of rights obtained by the easement holder." *Id.* at 5. However, the Court declined to rule on these matters, stating it "need not address each of these hypothetical disagreements to provide sufficient guidance to inform a reasoned valuation

assessment in preparation for a trial on damages." *Id.* Plaintiffs again raised this issue during the May 18, 2020 status conference.[1] Hrg. Tr. 24: 17–23. The Court responded thus:

> The *development rights* remain with this Plaintiff. What the Court was trying to do in the prior opinion is cover the situation where there might be a future flood, if you will, of flowage, impoundment, on Plaintiffs' property, but that's all. There should be nothing to preclude Plaintiffs from doing *whatever they can legally do* under other law on their property. The Government just doesn't have a limitation on development rights. It doesn't have any easements broader than a flowage easement.

Hrg. Tr. at 25: 10–19 (May 18, 2020) (emphasis added). The government's counsel agreed with the Court, but failed to shed any further light on the matter.[2] Hrg. Tr. at 25: 21–26: 3.

Plaintiffs conundrum it best illustrated by the example of the right to bring in fill material on the properties burdened by the flowage easements, or to exclude impounded stormwater from their property. This is not a mere hypothetical scenario. Across the Houston region, homeowners rebuilding after floods are literally elevating their homes above the floodwater level.[3] Some do so on piers, others by raising the home on fill material. Similarly, FEMA has published guidance for property owners instructing them on how to elevate the home above the floodwater elevation and how to completely exclude floodwaters from the structure by means of floodproofing.[4]

Thus, one of the questions that Plaintiffs seek to answer through the requested discovery is whether the right to elevate their home above the level of the flowage easement by the placement of

---

[1] Mr. CHAREST: "But when the actual easement exists and we're all long gone and doing other things or who knows what else, years later, the Government comes to enforce its rights under the flowage easement and then it asserts a much broader set of rights than is what's being described here. And to avoid that, we need to understand what the Government has done in the past."

[2] MS. TARDIFF: "Your Honor, that is also our reading of the Court's decision, that the permanent flowage easement is as was described in the Court's order, which gave the Corps the ability to inundate the properties where the floods pool through its operation of the project up to the limits of that Harvey flood flow elevation, but that's it. So that's our read of the Court's order as well."

[3] The Texas Tribune, "Six figures for six feet: Some Harvey victims in Houston spend huge sums to elevate their homes." (Mar. 14, 2018), https://www.texastribune.org/2018/03/14/harvey-elevate-homes-flood-houston-money-costs/.

[4] FEMA P-312, "Homeowner's Guide to Retrofitting 3rd Edition" (2014), Chapter 5 ("Elevating Your Home" and Chapter 7 (Floodproofing"), https://www.fema.gov/media-library/assets/documents/480; FEMA, P-1037 "Reducing Flood Risk to Residential Building That Cannot Be Elevated" (September 2015), https://www.fema.gov/media-library-data/1443014398612-a4dfc0f86711bc72434b82c4b100a677/revFEMA_HMA_Grants_4pg_2015_508.pdf.

fill material is a "development right" or a "lawful use" that they retain? Or may the Plaintiff completely exclude impounded stormwater from the structure or from the entire property by floodproofing? Either scenario would ostensibly interfere with the government's use of the flowage easement as available reservoir storage capacity for storing rainfall runoff held back and controlled by the Project.

Put another way, will the government—as it has done in other flowage easements—sue to enjoin the placement of any fill material because it interferes with the government's rights and impairs the public purpose of the easement? In *United States v. Austin Two Tracts, Ltd. P'ship*, the government quitclaimed certain land but reserved a flowage easement for the operation of Grapevine Dam and Reservoir. 239 F. Supp. 2d 640, 641 (E.D. Tex. 2002). The reservation language did not contain any prohibition on fill material, the landowner placed fill material on the easement, and the government sued to have that fill removed. *Id.* The court held that the placement of any amount of fill dirt is an interference with the rights of the owner of a flowage easement no matter how minimal. *Id.* at 643 ("If every land owner whose property is encumbered by a flowage easement acquired by the Government for the Grapevine Dam and Reservoir placed fill material in the easement, it is obvious that the Government's ability to impound flood water would be seriously impaired."). Other cases have similarly so held. *E.g. Hart v. U.S.*, 945 F. Supp. 1009, 1012–1013 (E.D. Tex. 1996); *United States v. Fisher-Otis Co.*, 496 F.2d 1146, 1152 (10th Cir. 1974).

Thus, at least in other federal courts, a landowner's property that was burdened by a government flowage easement has no right to fill because to do so would interfere or encroach on the government's right of use, and therefore would not be lawful. Plaintiffs discovery requests are intended to obtain clear, unambiguous, and binding answers from the government about what rights, if any, it will claim over the properties burdened by the flowage easements it took.[5] These issues are

---

[5] Plaintiffs have served specific requests for admissions on these matters, with a response due May 28, 2020. *E.g.* No. 191: Admit the existence of any Flowage Easement taken through Inverse Condemnation on a Test Property will not be used by You to deny a Test Property Plaintiff the right to fill a Test Property; No. 196: Admit the existence of any Flowage

6

plainly relevant to the compensation phase, as they inform the burden the flowage easements impose and the resulting impact on the value of the affected land.

The government complains about the following language in topics 1.a through 1.f: "[t]he obligations, requirements, or regulations related to flowage easements." Plaintiffs selected this language because they seek to discover what, if any, consequences might automatically flow from the imposition of a flowage easement. For example, Corps Policy Guidance Letter No. 32 (Apr. 28, 1993) on the Use of Corps Reservoir Flowage Easement Lands states:

> The primary consideration in approving excavations or landfill placements is the preservation of the flood storage capacity of the project. Therefore, landfill placements will not be approved unless substitute flood storage is provided. Proposals for excavation and grading of flowage easement areas will not be approved if they result in loss of flood control storage.[6]

Plaintiffs thus seek to depose a 30(b)(6) witness to discover whether the government will apply this policy—as well as other relevant policies, regulations or requirements—to the upstream properties subject to the appropriated flowage easements.

The government argues that the deposition notice is unduly burdensome because it would require the preparation of "numerous witnesses across multiple agencies." Plaintiffs note that this objection did not impede discovery during the liability phase, which involved numerous witnesses from multiple agencies. Further, such generic "undue burden" objections are improper without more. *Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 323, 325–26 (2005)(objecting party must show "specifically how, despite the broad and liberal construction of afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."). *Id.* Without conceding that the notice

---

Easement taken through Inverse Condemnation on a Test Property will not be used by You to deny a Test Property Plaintiff the right to exclude floodwaters from any structure on a Test Property; No. 197: Admit the existence of any Flowage Easement taken through Inverse Condemnation on a Test Property will not be used by You to deny a Test Property Plaintiff the right to alter the floodwater storage capacity of a Test Property.
[6] https://planning.erdc.dren.mil/toolbox/library/PGL/pgl32.pdf.

is overbroad, Plaintiffs are unable to narrow the scope of topics 1.a through 1.f because of the government's blanket objections and failure to produce relevant documents in its possession. For example, the Corps has not produced any property records of flowage easements that are stored in its Real Estate Management Information System (REMIS). *See* Hrg. Tr. 23: 21–24: 7 (May 18, 2020); Plaintiffs' Mot. to Compel, at 8 (ECF No. 298) (seeking to compel their tenth requests for production concerning property records of flowage easements). REMIS is not publicly accessible, and other public sources of federal property records such as the Federal Real Property Public Data Set[7] maintained by the General Services Administration do not contain the information. Plaintiffs have been unable to find any similar situations whereby the government has taken a flowage easement by inverse condemnation over a such a large number of suburban residential subdivisions and commercial properties. Accordingly, as this case presents unique circumstances, and therefore requires some unique discovery.

On topics 2, 3 and 4, the government makes the same objections that the topics are irrelevant, overly broad, burdensome, disproportionate and oppressive. Thus, the government relies upon its own refusal to produce the very documents and records that would allow Plaintiffs to narrow the scope of the notice. ECF No. 291 at 6–7 (recognizing that the topics are the same as Plaintiffs' tenth request for production). For the same reasons argued in Plaintiffs Motion to Compel Production (ECF No. 298 at 8), topics 2, 3 & 4 are narrowly tailored to only flowage easements taken through inverse condemnation, information to which the government has very easy access as the landowner.

**2.    Offsets**

Regarding offsets, Plaintiffs identified eleven topics all concerning specific federal benefits in order to determine which the government would seek to offset against an award of just compensation, and under what authority or rationale such offsets would be claimed. The government concedes that

---

[7] https://www.gsa.gov/policy-regulations/policy/real-property-policy/asset-management/federal-real-property-profile-frpp/federal-real-property-public-data-set

8

federal benefits received by the Plaintiffs "are relevant and should be considered in the Court's determination of just compensation." ECF No 291 at 8. Yet the government simultaneously argues that any agency regulations concerning duplication of benefits are irrelevant. The issue of offsets through application of duplication of benefits or recoupment is extremely complicated, and each agency has specific rules, policies, and guidance (*e.g.* FEMA regulation 44 C.F.R. § 206.191; HUD rules updating Duplication of Benefits Requirements Under the Stafford Act for Community Development Block Grant (CDBG) Disaster Recovery Grantees, 84 Fed. Reg. 28836 (Jun. 20, 2019); SBA regulation 13 C.F.R. § 123.101(c)). Indeed, in a report to Congress, the Congressional Research Service wrote "[t]here is evidence that the duplication of benefits regulations and laws are subject to disparate interpretations among federal agencies. This has led to some disagreement as to how the duplication of benefits policy should be implemented and remediated."[8]

Plaintiffs should not have to wait for the government's pre-trial brief to understand the government's interpretation of these rule, and if they apply to the Plaintiffs.[9] If the agency rules are not applicable to the Plaintiffs, then the government should simply say so by responding to Plaintiffs' Interrogatory No. 23. *See* ECF No 299 at 4–7 (seeking to compel answer).

The analysis of offsets is a mixed question of fact and law, but this should not preclude the plaintiffs from any discovery related to this issue. The government relies on cases discussing whether offsets against just compensation are appropriate at all, ECF No. 291 at 7–8 (discussing *Horne*, *Bauman* & *Cent Pines Land Co.*), not whether discovery on this topic is prohibited. For example, in *Cent Pines Land Co. v. United States*, the parties agreed that the royalty and bonus benefits received should be offset because they amounted to a portion of the compensation for the temporary taking of the leases. 107 Fed. Cl. 310, 329-30 (2010). And in *Horne v. Dept. of Agriculture*, the quote cited by the government

---

[8] Congressional Research Service, "SBA and CDBG-DR Duplication of Benefits in the Administration of Disaster Assistance: Background, Policy Issues, and Options for Congress," R44553 (Jul. 1, 2016).
[9] Notably, the government's Rule 26 disclosures do not contain a disclosure of the various offsets it may seek.

9

related to whether there was a categorical taking if the property owner retained a contingent interest in the value of the property, again not discovery. 576 U.S. 351, 362–63, (2015). The mere fact that the Court will eventually decide the ultimate issue of whether prior payments to the Plaintiffs will be offset against just compensation awards does not preclude all discovery on this very issue.

Finally, the government complains that topics 5 through 15 include federal programs that are not relevant to the six test properties. ECF No. 291 at 9. That may be so, but to deny any discovery for this reason would seriously impede the entire purpose of using bellwether test properties. ECF No. 37, February 1, 2018 Case Management Order, at 2, ¶5 (*i.e.* to provide a factual basis for the disposition of the upstream cases).

### 3.   Federal Programs

Regarding topics 16.a through 16.j, Plaintiffs seek to discover the burden the appropriated flowage easements impose, and the resulting impact on the value of the affected land. The government argues that when the Court declined to rule on these "hypothetical disagreements," all discovery on these topics is precluded as irrelevant to just compensation. ECF No 291 at 10–11. Plaintiffs have good reason to disagree because the existence of a flowage easement has been used by the federal government to deny a property owner access to the benefits of certain federal programs.

For example, on topic 10, FEMA has previously cited the fact that a property is located within a Corps flowage easement in its review of a Stafford Act assistance grant to the landowner, as well as whether the landowner knew of and assumed the risk of flood damages.[10] On the National Flood Insurance Program, topic 11, Plaintiffs seek to determine if they will be to keep (or obtain) flood insurance on a property burdened by a Corps' flowage easement, or whether there is some unknown

---

[10] Second Appeal - City of Clarksville, PA ID 125-15160-00, FEMA-1909-DR-TN, Project Worksheets (PW) 2826 and 5011 – Flood Control Works (Dec. 18, 2015), https://www.fema.gov/appeal/288333?appeal_page=analysis ("FEMA's existing practice is to deny assistance to facilities located in USACE flowage easements where the language in the flowage easement is clear that the Applicant is responsible for any flood damage that occurs to its facilities due to USACE actions or any other causes specified in the flowage easement.").

and obscure federal policy, regulation or guidance that will exclude the Plaintiff from the program, require higher premiums, or fall outside of the "covered loss" definition. These types of consequences are real concerns, and will have a material impact on the value of a property.

Plaintiffs have sought the answers to these topics through requests for admissions Nos. 157 through 187, which if the government answers forthrightly, may address the need for the deposition. So, for example, if the government answers "no" to request No. 157 ("Admit the existence of any Flowage Easement taken through Inverse Condemnation on a Test Property will not be used by You to deny any financial assistance available to a Test Property Plaintiff pursuant to the Stafford Act."), then no deposition on the topic would be needed.

### 4. Reviews, Studies and Specific Documents

Topics 17 through 27 mostly concern post-trial documents and studies that on the whole, the government has resisted producing. Plaintiffs have filed a motion to compel production, ECF No. 298, and have explained why these documents and studies are relevant and necessary to their claims for just compensation. For the same reasons set forth in that motion to compel, the government's objections and assertions of privilege are not well taken. That these documents, studies, and associated ESI exist was not disputed by Mr. Thomas in his deposition. ECF No. 298 at 6; ECF No. 298–5 (deposition excerpts). The Court's resolution of that motion is necessary before Plaintiffs can determine whether to proceed with the 30(b)(6) deposition on topics 17 through 27.

### 5. Policies and Criteria

Topic 29 requests a witness to testify about Uniform Relocation assistance benefits available to the Plaintiffs under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601 – 4655 ("URA"). This topic was the subject of Plaintiffs' Interrogatory No. 24, to which the government objected, but conceded the relevance of the topic. ECF No. 299, at

8 (Plaintiffs "may be eligible to seek reimbursement of "reasonable costs, disbursements, and expenses" actually incurred under 42 U.S.C. § 4654(c)").

Topic 30 asks about the application of Corps Engineering Regulation ER 405-1-16 which implements the URA to the Plaintiffs. The government failed to provide a substantive response to Interrogatory No. 24, and plaintiffs have filed a motion to compel. ECF No. 299, at 8–9. The Court's resolution of that motion is necessary before Plaintiffs can determine whether to proceed with the 30(b)(6) deposition on topics 29 and 30.

### 6. Hydrology and Frequency

Topics 31 through 41 concern post-taking studies, data, or analyses concerning hydrology, hydraulics, rainfall frequencies, flood risks relevant to the Addicks and Barker Project. Again, Mr. Thomas testified that this information exists. ECF No. 298 at 6; ECF No. 298-5 (deposition excerpts). These topics are also the subject to Plaintiffs' motion to compel production. ECF No. 298 at 5–6 (concerning RFPs 58–69).

During the meet and confer, Plaintiffs made clear that they would not seek to re-plough matters already covered during the liability phase. Plaintiffs offered a stipulation to the government that they would drop these requests if the parties stipulate that risk and flood frequency will not be factors used to determine just compensation. The government has not agreed to limit the use of these data but, at the same time, has refused to provide it, and now seeks protection from any questions on the matters.

The YELLOW BOOK confirms it is the duty of the government to provide to the expert the information sought in these interrogatories, including the property interests lost by the Plaintiffs from the taking as opposed to those which remain with the property owner. *See* YELLOW BOOK at 11 ("It is the responsibility of the acquiring agency to provide the appraiser with an accurate description of the property interest(s) to be appraised in each assignment."); *id.* ("The appraiser must fully understand

the nature of the estate(s) to be acquired, and request legal instructions if clarification is needed, for each assignment."). As the YELLOW BOOK directs, in inverse condemnation cases "Government's trial counsel must determine what is to be measured, while the appraiser determines how to measure it." *Id.* at 50 (emphasis in original). These topics seek to discover the instruction(s) and information the government is giving to its experts concerning risk and flood frequency.[11]

Unlike the liability phase, the new analyses on risk and flood frequency was not developed solely for this litigation. The government concedes this work is being done, at least in part of the ongoing Buffalo Bayou and Tributaries Resiliency Study. ("BBTRS") ECF No. 291 at 15. Topics 31 through 41 seek to discover whether the government is in possession of this updated information on risk and flood frequency. For the reasons stated in Plaintiffs motion to compel production, these topics are relevant, and the government has failed to properly assert the deliberative process privilege or produce a privilege log. ECF No 298 at 10–12. To the extent there are legitimate concerns regarding confidentiality, the government can designate documents, ESI, and testimony accordingly.

Topics 36 through 39 seek a witness to testify about the government's understanding of the public disclosure of specific risk-related information such as the depiction of the reservoir pools on new flood insurance rate maps (topics 36 & 37), and the government's interpretation and communications with other parties regarding terms used in the new residential seller's disclosures required by the Texas Property Code. This information is relevant to just compensation, because it impacts the burden the appropriated flowage easements impose, and the resulting impact on the value of the affected land.

---

[11] The YELLOW BOOK confirms that it is the government which must provide instructions(s) to the expert regarding any special, hypothetical, or limiting conditions apply to their work: "In developing an appraisal under these Standards, appraisers must understand the special assignment conditions associated with the valuation of property being acquired by federal agencies. These special assignment conditions include the use of instructions, hypothetical conditions, extraordinary assumptions, and jurisdictional exceptions from USPAP as well as the special rules and methods required in these appraisals. Application of these Standards may require instructions from the acquiring agency." YELLOW BOOK at 12-13 (emphasis added).

As proven at trial, the risk of Project-induced flooding was and is not well understood by Upstream plaintiffs, or the market as a whole. Topics 31 through 41 seek to discover the updated assessment of the true risk of Project-induced flooding in order to determine just compensation.

### 7. Appraisals

During Mr. Thomas' deposition, he testified that the Corps has conducted an updated gross appraisal in connection with the BBTRS. The government did not produce any new documents concerning appraisals, flood damage estimates, or structure inventories in response to Plaintiffs' requests nos. 35–45. This matter is discussed in Plaintiffs' motion to compel production. ECF No. 298 at 5. Furthermore, Plaintiffs have noticed the deposition of the Mr. Timothy Nelson, Chief of Real Estate, Galveston Division whom Mr. Thomas specifically identified as a person with knowledge of the Corps' new gross appraisal. The government complains that discovery related to any appraisal prematurely seeks expert disclosures, is overly broad, and is duplicative. ECF 291 at 18–20.

First, the discovery of relevant factual information developed by and in the possession of the Corps in the ordinary course of business is fair game to the Upstream Plaintiffs. A gross appraisal of the upstream properties undertaken for the purpose of the BBTRS will necessarily include the six Test properties in the analysis, and accordingly is relevant. Further, Plaintiffs are entitled to discover the methodology by which the appraisal was conducted, its limitations, and its results. That this factual information may be used by the Parties' respective experts is not a valid basis to suppress its production during fact discovery.

Plaintiffs may be able to modify or narrow these 30(b)(6) topics in light of the Court's disposition on their motion to compel production, and the testimony of Mr. Nelson.

### 7. This Litigation

This topic seeks a deposition regarding the government's discovery responses. Topic 48 identifies five specific interrogatories (17, 18, 19, 20, and 21), and topic 49 concerns general

government discovery responses. The government has moved for protection only from topic 48, not 49. ECF No. 291 at 21. The government objected and refused to answer each of the interrogatories at issue. *See* ECF No. 291-1 at pages 163–171 (Exhibit 7). Plaintiffs have moved to compel an answer to interrogatory No. 21, as well as others. ECF No. 299. Because there are currently no substantive government answers to these interrogatories, Plaintiffs will temporarily abate topic 48 until the government serves its answers.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request the Court deny the government's Motion for a Protective Order Precluding Depositions Under Plaintiffs' Rule 30(b)(6) Deposition Notice.

Dated: June 1, 2020

Respectfully submitted,

| | |
|---|---|
| /s/ Charles Irvine | /s/ Daniel Charest |
| Charles Irvine | Daniel Charest |
| Irvine & Conner PLLC | Larry Vincent |
| 4709 Austin Street | Burns Charest LLP |
| Houston, Texas 77004 | 900 Jackson Street, Suite 500 |
| 713-533-1704 | Dallas, Texas 75202 |
| charles@irvineconner.com | 469-904-4550 |
| | dcharest@burnscharest.com |
| **Co-Lead Counsel for Upstream Plaintiffs** | lvincent@burnscharest.com |
| | |
| | **Co-Lead Counsel for Upstream Plaintiffs** |
| | |
| /s/ Armi Easterby | /s/ Vuk Vujasinovic |
| Edwin Armistead "Armi" Easterby | Vuk S. Vujasinovic |
| Williams Hart Boundas Easterby, LLP | VB Attorneys, PLLC |
| 8441 Gulf Freeway, Suite 600 | 6363 Woodway Dr., Suite 400 |
| Houston, Texas 77017 | Houston, Texas 77057 |
| Telephone: (713) 230-2200 | 713-224-7800 |
| aeasterby@whlaw.com | Vuk@vbattorneys.com |
| | |
| **Co-Lead Counsel for Upstream Plaintiffs** | **Of Counsel for Upstream Plaintiffs** |

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing instrument, together with all exhibits, was served on all counsel of record in this Sub-Master Cause by filing it via the Court's ECF system on June 1, 2020.

/s/ *Daniel Charest*
Daniel Charest