## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| In re UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Sub-Master Docket No. 17-9001L<br><br>Judge Charles F. Lettow |
| THIS DOCUMENT APPLIES TO:<br>ALL UPSTREAM CASES | |

## TEST PROPERTY PLAINTIFFS' OPPOSITION TO MOTION FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES

In February 2020, the government served a request for production on the six (6) Test Property Plaintiffs seeking Plaintiffs' tax records:

> All documents related to any disaster-related casualty loss from Hurricane Harvey that you claimed for the Test Property or any personal property, including all federal income tax returns and attachments, worksheets, schedules and other supporting documentation.

Dkt. No. 292-1, Request for Production 52. Plaintiffs objected to the request and their objections were upheld by this Court after the government rejected a compromise and filed a motion to compel. *See* Dkt. No. 311, at 3. In its ruling, the Court noted its skepticism that the collateral benefits associated with a casualty loss deduction would be relevant to the determination of just compensation, and noted that this tax information "can be sought by defendant through other, less intrusive, means." *Id.*

Having been rejected in its prior efforts and despite rejecting the compromise offered by Plaintiffs, the government served ten interrogatories (plus subparts), a tally which pushed its total past the aggregate permitted by the RCFC and required the government to request leave to serve those addition interrogatories. Dkt. No. 320, at 2 ¶ 4. For the reasons set forth in Plaintiffs' prior briefing (Dkt. No. 302), during oral argument (May 18, 2020 transcript; Jun. 10, 2020 transcript; Aug. 21, 2020 transcript), and below, Plaintiffs oppose the government's motion.

1

## ARGUMENT

### A.      The information sought remains irrelevant as a matter of law.

As the government confirmed during the May 18th hearing, it requested the documents at issue to demonstrate "that some of the Plaintiffs received a tax benefit, that is, they had a reduction in their income tax by the proportionate amount of the casualty loss that they were able to take as a deduction." Dkt. No. 297, Transcript of Hearing May 18, 2020, at 15:25-16:9. But any alleged decrease in income taxes paid by a Plaintiff resulting from an IRS provisions applicable to <u>all</u> property owners spanning Texas' coastline (and reaching far inland) who suffered losses relating to Tropical Storm Harvey constitutes a "general benefit" and cannot be considered in adjudicating just compensation.[1] As such, the information the government seeks is irrelevant to the determination of just compensation as a matter of law. On this basis alone, the request for leave to serve the additional interrogatories to elicit irrelevant information can be and should be denied.

### B.      The interrogatories violate the spirit, if not the letter, of this Court's prior order and the government should be ordered to revise and narrow the requests.

The interrogatories propounded go well beyond the "less intrusive means" recited in the Order denying the government's motion to compel production of Plaintiffs actual tax documents. Dkt. No. 311, at 3. While the government characterizes, the interrogatories as "narrowly tailored" to request the factual information sought," as a quick review of the proposed interrogatories refutes that assertion:

> 26. Did you claim (or do you expect to claim) any casualty loss deduction related to Hurricane Harvey or Tropical Storm Harvey ("Harvey loss deduction") on

---

[1] *Hendler v. United States*, 38 Fed. Cl. 611, 617 (1997), *aff'd*, 175 F.3d 1374 (Fed. Cir. 1999) (noting that only a "special benefit" that "inures specifically to plaintiff," rather than a "general benefit" which is made available to the community at large, may be considered when determining just compensation for a Fifth Amendment taking). *see also* UNIFORM APPRAISAL STANDARDS FOR FEDERAL LAND ACQUISITIONS § 1.7.1.2, at 38 (Interagency Land Acquisition Conference 2016); Dkt. No. 311 at 3 (noting that the Court was "skeptical that such a collateral benefit would be considered as a relevant consideration in the calculation of just compensation").

your original (or amended) federal income tax return for 2016, 2017 or any subsequent tax year?

If your answer to Interrogatory No. 26 is "yes," answer the following additional interrogatories with respect to your Test Property:

27. State the year(s) for which you claimed a Harvey loss deduction and the total amount of the deduction reported on your federal income tax return(s) (e.g., Form 1040, Schedule A, line 28) for that year.

28. State the method(s) you used to determine the amount of your claimed Harvey loss deduction, show how you calculated that deduction, and identify the source of all information, data or figures used in that calculation.

29. Does the amount of your claimed Harvey loss deduction stated in response to Interrogatory No. 27 include any damages that are unrelated to flooding, such as wind or rain damage? If your answer is "yes," please describe the damage unrelated to flooding and state the amount of the Harvey loss deduction attributable to damage unrelated to flooding.

30. Did the calculation of your Harvey loss deduction include a reduction for "no-cost repairs," as defined and described in Section 6 of IRS Revenue Procedures 2018-8 and 2018-9? If your answer is "yes," state the amount of that reduction and describe how you determined or calculated that amount.

31. Did the amount of the Harvey loss deduction stated in response to Interrogatory No. 27 include an amount related to the loss of personal property, as defined herein, or personal belongings, as defined in Section 3.03 of Revenue Procedure 2018-8? If your answer is "yes," (1) state the amount attributable to such loss, (2) identify the method used to calculate that loss by reference to the methods described in Section 5 of Revenue Procedure 2018-8 (i.e., the "De Minimis Safe Harbor Method," the "Replacement Cost Safe Harbor Method"), and (3) show your calculation of such loss.

32. For the year(s) in which you claimed a Harvey loss deduction on your federal income tax return, what was your (1) filing status (i.e., married filing joint return, married filing separate returns, head of household, single), (2) reported "adjusted gross income," (e.g., Form 1040, line 37) (3) reported "taxable income" (e.g., Form 1040, line 43), and your federal income tax liability (e.g., Form 1040, line 56)? [If you file a form other than Form 1040 with the IRS, please refer to the IRS Form you used for the year(s) in question.]

33. Using your Form 1040 for the year in which you took a Harvey loss deduction, state what your "taxable income" and federal income tax liability *would have been* if you had not taken any deduction for your Harvey loss. If you use software to calculate your income tax, such as TurboTax, these amounts can be determined by simply removing the Harvey loss deduction and recalculating your federal income tax liability.

34.    In any year subsequent to the year in which you claimed a Harvey loss deduction, as identified in Interrogatory 27, did you receive any insurance or other payment(s) to compensate you in whole or in part for the Harvey losses? If so, please state the source(s) and amount(s) of such payment(s). If the amount of such payment(s) were more or less than the anticipated amount taken into account in determining your Harvey loss deduction, how did you account for the difference on your federal income tax return(s)?

If you file a form other than Form 1040 with the IRS, please refer to the IRS Form you used for the year(s) in question.

35.    Identify all documents you reviewed, referred to, examined or otherwise considered in preparing your responses to these interrogatories.

The government's request to seek information well beyond the <u>amount</u> of any claimed tax benefit (*i.e.*, information showing the figure deducted from taxable income and that Plaintiffs' effective tax rate) continues its disregard of this Court's concerns as to the burdens inflicted on Plaintiffs. *See* Dkt. No. 297, Transcript of Hearing May 18, 2020, at 19:3-7 ("The test Plaintiffs -- the six of them -- in this particular case have enough of a burden the way it is without extending their exposure to undue personal invasion of privacy any further than it has to be.").

Independently, Plaintiffs oppose producing the expansive requested information (as well as the calculations used in determining that data) to the government since potential of an IRS audit always underlies a taxpayer's dealings with any government actor—and especially since a ruling on this issue has the potential to impact (and chill) thousands of property owners entitled to relief.[2] Each of the interrogatories that ask for methods and underlying calculations dives deeper into the privilege than

---

[2] *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (noting a public policy against unnecessary public disclosure of tax information based on "the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns"); *see also Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962) ("The protection of privacy is of fundamental-indeed, of constitutional-importance. Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy."); *Id.* ("privacy once broken … cannot be retrieved"); *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981) (noting a "public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns").

the rejected request for production did. Beyond that, the notion that Plaintiffs should be required to generate a hypothetical tax return finds no support in the law and clearly calls for the plaintiff to develop new information and express opinions more suited for a tax expert. The Court correctly suggested that information about the amount of tax benefit (even if it were relevant) "can be sought by defendant through other, less intrusive, means." Dkt. No. 311, at 3. But this effort completely misses that mark.

C.  **A compromise; Plaintiffs provide the information sought as if the government had served interrogatories in conformity with this Court's directives.**

Pending before the Court is a motion to serve all of the above-listed requests. Instead of having the Court either (a) deny the motion and instruct the government to "try again" with new requests and a new motion for leave to serve them or (b) have the Court parse or revise the government's requests, to try and bring this issue to an end Plaintiffs propose to answer the following additional interrogatories (*italicized* where different from the government's prior requests):

26.  Did you claim (or do you expect to claim) any casualty loss deduction related to Hurricane Harvey or Tropical Storm Harvey ("Harvey loss deduction") on your original (or amended) federal income tax return for 2016, 2017 or any subsequent tax year?

If your answer to Interrogatory No. 26 is "yes," answer the following additional interrogatories with respect to your Test Property:

27.  State the year(s) for which you claimed a Harvey loss deduction *and the following information from your Form 1040 for each such year:*

a.   *Your filing status;*

b.   *Line 28 (Other Miscellaneous deductions – but including only amount attributable to Hurricane Harvey or Tropical Storm Harvey);*

c.   *Line 37 (Adjusted Gross Income);*

d.   *Line 40 (Total Itemized Deductions);*

e.   *Line 42 (Total Exemptions);*

f.   *Line 43 (Taxable Income); and*

g.   *Line 56 (Total Tax).*

With this data, and the publicly available information regarding the applicable tax brackets, the

government can determine what the tax owed by each Test Property Plaintiff would have been without the "Harvey loss deduction."[3] Any arguably legitimate need of the government of "tax information" would thus be met without undue burden or intrusion as to the Plaintiffs.

## CONCLUSION

Plaintiffs request the government's motion be denied, or, in the alternative, the government be permitted to serve only two additional interrogatories as proposed above.

Dated August 25, 2020.

---

[3] *See* Dkt. No. 323, Transcript of Hearing August 21, 2020, at 17:10-12 (COURT: "What you really want and are driving at, Ms. Tardiff, seems to be the marginal tax rate."); *id.* at 18:9-16 (MS. TARDIFF: "[W]e are seeking enough information off of Plaintiffs' tax returns, actually, for our expert to be able to go ahead and calculate the marginal tax rate and understand what that marginal tax rate and understand what that marginal tax rate is with the deduction in place and then without the deduction in place in order to kind of ascertain the economic benefit here of the deduction.").

Respectfully submitted,

*s/ Daniel H. Charest*

Daniel H. Charest
Larry Vincent
Burns & Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com

    *Co-Lead Counsel, Upstream Pre-Trial*
    *Discovery and Dispositive Motions*

    *Co-Lead Counsel for Upstream Plaintiffs*
    *as to Jurisdictional Discovery, Motion to*
    *Dismiss, and Scheduling*

Charles Irvine
Irvine & Conner PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
charles@irvineconner.com

    *Co-Lead Counsel, Upstream Pre-Trial*
    *Discovery and Dispositive Motions*

Edwin Armistead "Armi" Easterby
WILLIAMS HART BOUNDAS
EASTERBY, LLP
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
713-230-2200
aeasterby@whlaw.com

    *Co-Lead Counsel, Upstream Pre-Trial Discovery*
    *and Dispositive Motions*

Vuk S. Vujasinovic
VB ATTORNEYS, PLLC
6363 Woodway Dr., Suite 400
Houston, Texas 77057
713-224-7800
vuk@vbattorneys.com

    *Of Counsel for Individual Upstream Plaintiffs as*
    *to Jurisdictional Discovery, Motion to Dismiss,*
    *and Scheduling*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certified that a true and correct copy of the foregoing instrument was served on all counsel of record in this Sub-Master Cause by filing it via the Court's ECF system on August 25, 2020.

*s/ Daniel H. Charest*
Daniel H. Charest
