# In the United States Court of Federal Claims

Sub-Master Docket No. 17-9001L

(Filed: January 28, 2021)

| | |
|---|---|
| IN RE UPSTREAM ADDICKS AND BARKER (TEXAS) FLOOD-CONTROL RESERVOIRS | Application of the deliberative process privilege; protection of pre-decisional and deliberative materials; no protection for factual materials that can be segregated; no governmental waiver |
| THIS DOCUMENT APPLIES TO: ALL UPSTREAM CASES | |

Daniel H. Charest and E. Lawrence Vincent, Burns Charest LLP, Dallas, Texas, Charles Irvine, Irvine & Conner PLLC, Houston, Texas, and Edwin Armistead Easterby, Williams Hart Boundas Easterby, LLP, Houston, Texas, Co-Lead Counsel for Upstream Plaintiffs.  Of Counsel was Vuk S. Vujasinovic, VB Attorneys, PLLC, Houston, Texas.

Kristine S. Tardiff, Trial Attorney, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant.  With her on briefs were Paul E. Salamanca, Deputy Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., and Laura W. Duncan, Sarah Izfar, and Frances B. Morris, Trial Attorneys, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

In this takings case involving properties damaged by impounded floodwaters derived from Hurricane Harvey in 2017, the court found the government liable for just compensation after a trial focusing on thirteen bellwether plaintiffs out of the hundreds who brought suit.  *See In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 146 Fed. Cl. 219 (2019) (finding liability for taking a flowage easement); *see also In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 148 Fed. Cl. 274 (2020) (delineating scope of the flowage easement).  Following the trial and decision on the issue of liability, the case shifted to discovery regarding just compensation.  Currently pending before the court is plaintiffs' motion to compel the production of documents constituting "a draft of the Buffalo Bayou & Tributaries Resiliency Study and its appendices," prepared by the United States Army Corps of Engineers.  Pls.' Mot. to Compel Produc. of Docs. Withheld for Deliberative Process Privilege ("Pls.' Mot.") at 1, ECF No. 334.  The United States has invoked the deliberative process privilege to withhold the materials.  *See* Def.'s Resp., ECF No. 335.  Following the completion of briefing on the motion,

*see* Pls.' Reply, ECF No. 336; Def.'s Sur-Reply, ECF No. 341, the court held a hearing on November 20, 2020. The motion is ready for disposition.

The court concludes that the deliberative process privilege applies to those parts of the draft and appendices that constitute proposed analyses and policy decisions attendant to factual material. The motion to compel is GRANTED in part and DENIED in part. The motion is granted insofar as it applies to the factual material contained in the appendices to the Buffalo Bayou & Tributaries Resiliency Study, but it is denied to the extent that it requests analyses antecedent to the Corps' policy decisions.

## BACKGROUND

Hurricane Harvey made landfall in August 2017, flooding over 150,000 homes in Houston. Among those affected were the "private property owners within the Addicks and Barker Reservoirs, west of Houston, upstream of the federally designed, built, and maintained Addicks and Barker Dams." *In re Upstream Addicks & Barker*, 146 Fed. Cl. at 227. The dams collected storm water from Harvey "in their respective reservoirs[,] causing properties within the reservoir to flood from the impounded water." *Id.* Hundreds of complaints relating to Harvey and the Addicks and Barker Dams were filed. *Id.* at 228. "Using case management techniques comparable to those employed in multi-district litigation," the Chief Judge of the court consolidated the cases within one Master Docket, then bifurcated the issues of liability and damages. *Id.* The Chief Judge later divided the Master Docket into two sub-master dockets, "one for downstream properties, *In re Downstream Addicks and Barker (Texas) Flood-Control Reservoirs*, Sub-Master Docket No. 17-9002L, and, pertinent here, one for upstream properties, *In re Upstream Addicks and Barker (Texas) Flood-Control Reservoirs*, Sub-Master Docket No. 17-9001L." *Id.*

On December 17, 2019, the court determined that the United States was liable to thirteen bellwether property owners under the Fifth Amendment of the United States Constitution for the taking of a non-categorical, permanent flowage easement on their properties as a result of government-induced flooding during Hurricane Harvey, produced by the government's construction, maintenance, and operation of the Addicks and Barker Dams. *See generally In re Upstream Addicks & Barker*, 146 Fed. Cl. 219. The court subsequently selected six of the thirteen bellwether properties to serve as test properties for the just compensation phase of the case. *See* Order of January 30, 2020, ECF No. 268 (Order Selecting Bellwether Properties for Compensation Phase). The parties have since commenced discovery on the issue of compensation.

In ruling on various motions related to factual discovery, the court concluded on June 29, 2020 that "[i]nformation relating to the Buffalo Bayou flood control project generally that would affect the Addicks and Barker Dams and Reservoirs, or information directly relating to the Addicks and Barker Dams and Reservoirs, or the effects from Hurricane Harvey on these areas, regardless of date of creation, is relevant." Order of June 29, 2020, at 3-4, ECF No. 311. The court further held that the Buffalo Bayou & Tributaries Resiliency Study ("the Study") being conducted by the United States Army Corps of Engineers was discoverable to the extent that it

contained information relating "to the amount of risk of future flooding at the time of the taking." *See id.* at 4.

On September 24, 2020, the government served plaintiffs "with its privilege log identifying documents withheld under the deliberative process privilege, and its supporting declaration of Lieutenant General Scott A. Spellmon." Def.'s Resp. at 4. Shortly thereafter, in October 2020, the Corps issued publicly an interim report in which it said it had initiated the Study "in response to several recent flood events in the Houston metro area" with the primary goal of "identify[ing], evaluat[ing], and recommend[ing] actions to address the changed conditions, including potential modifications to the Buffalo Bayou system to reduce flood risks to people, property, and communities." Buffalo Bayou & Tributaries Resiliency Study Interim Feasibility Report at 7, ECF No. 347-1.

Although the interim report was published in October 2020, plaintiffs seek an earlier, more comprehensive draft version which included accompanying detailed appendices. *See* Pls.' Mot. at 1. Plaintiffs assert that "[t]he withheld documents reflect the Corps' up-to-date views on . . . a host of topics that directly bear on the issues made subject of the compensation phase of this case." Pls.' Reply at 1. Relatedly, on October 12, 2020, Harris County Flood Control District ("Harris County District" or "District") produced to plaintiffs a version of an appendix to the draft report in response to a subpoena. *See* Pls.' Notice at 1, ECF No. 348; Def.'s Notice at 1, ECF No. 353. A week later, on October 19, 2020, counsel for the Harris County District provided plaintiffs' counsel with a list of documents being withheld from production in response to the subpoena. *See* Def.'s Notice Ex. B, ECF No. 353-1. Then, on October 22, 2020, the District's counsel notified plaintiffs' counsel that "several documents . . . were inadvertently produced" and that the District "requests the retraction of these documents." Def.'s Notice Ex. C, ECF No. 353-1. Among the exhibits specified in the District's request for clawback was the draft appendix. Def.'s Notice at 2. Counsel for the government confirmed the District's request later that day, asserting in an email to plaintiffs' counsel that the pertinent documents "fall within the scope of the United States' assertion of the deliberative process privilege . . . ." *See* Def.'s Notice Ex. E, ECF No. 353-1. Now, plaintiffs argue that "[t]here has been no clawback" of the draft appendix inadvertently disclosed by the District, Hr'g Tr. 55:7-12 (Nov. 20, 2020),[1] while the government asserts that its email qualifies as a written clawback request, *see* Def.'s Notice.

Counsel for the government represents that the Study is ongoing, stating that "[t]here will be more reports to come, including a draft feasibility report with a [Tentatively Selected Plan, or TSP,] and a draft environmental impact statement to support that report." Hr'g Tr. 44:23 to 45:1. Lead counsel for the plaintiffs asserts that "the Corps reversed course" while discovery was ongoing, "buried the TSP[,] and decided to issue an interim report" in October 2020 instead. Hr'g Tr. 7:6-10. Plaintiffs seek to compel the disclosure of the draft version of the Study and appendices. *See* Pls.' Mot.

---

[1] The date will be omitted from future citations to the transcript of this hearing.

### STANDARDS FOR DECISION

"Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court." *Forsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984). "Accordingly, resolution of a motion to compel discovery is committed to that discretion." *3rd Eye Surveillance, LLC v. United States*, 143 Fed. Cl. 103, 109 (2019) (citing *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986)). When deciding motions to compel, the "court must balance potentially conflicting goals," *Petro-Hunt, L.L.C. v. United States*, 114 Fed. Cl. 143, 144 (2013), with the understanding that "[m]utual knowledge of all relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

"Any description of the deliberative process privilege must begin with the foundational understanding that 'the public . . . has a right to every man's evidence.'" *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 575 (2012) (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)) (additional citation omitted). Executive privileges "are designed to protect weighty and legitimate competing interests. . . . [E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." *Nixon*, 418 U.S. at 709-10 (footnote omitted). "In short, privileges generally, and governmental privileges in particular, comprise those rare situations when 'the public need for all available evidence balances against the public interest in confidentiality' and can be found wanting." *Sikorsky Aircraft*, 106 Fed. Cl. at 575 (quoting Note, *The Privilege of Self–Critical Analysis*, 96 Harv. L. Rev. 1083, 1084 (1983)).

The deliberative process privilege is one of several tiers of "executive privilege," which collectively "relate to a range of executive functions and actions and . . . hav[e] a hierarchical ranking in importance." *Sikorsky Aircraft*, 106 Fed. Cl. at 575. The most important tier of executive privilege "may be termed the 'Presidential privilege.'" *Id.* This tier "rests in large part on the constitutional separation of powers, affords the President of the United States considerable autonomy and confidentiality, and gives 'recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties.'" *Id.* (citing *Cheney v. United States Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 382 (2004)) (additional citations omitted). Another form of executive privilege is the "state secrets" or "national security privilege," which protects military, diplomatic, or foreign policy secrets from disclosure. *See Nixon*, 418 U.S. at 710-11, 712 n.19. Other versions of executive privilege include a quasi-judicial privilege that protects the mental processes of executive officials when acting in a judicial capacity, *see Morgan v. United States*, 304 U.S. 1, 18 (1938), the informer's privilege, which protects the identity of criminal informants, *see Roviaro v. United States*, 353 U.S. 53, 59-60 (1957), and the law enforcement investigatory privilege, which protects information produced pursuant to investigations of potential violations of the law, *see In re Sealed Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *National Labor Relations Board v. Sears,*

*Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal quotation marks omitted)).  "The privilege is a creation of federal common law and thus is recognized under Fed. R. Evid. 501." *Sikorsky Aircraft*, 106 Fed. Cl. at 576 (citing *Evans v. City of Chicago*, 231 F.R.D. 302, 315 n.5 (N.D. Ill. 2005)) (additional citations and footnote omitted).  An invocation of the privilege must meet both procedural and substantive requirements.  Procedurally, the privilege may only be invoked by the head of an agency or a delegate after "thorough" and "personal review."  *Marriott Int'l Resorts v. United States*, 437 F.3d 1302, 1307 (2006).  The agency head or delegate must also "identify the specific information that is subject to the privilege and provide reasons for maintaining the confidentiality of the pertinent record."  *Sikorsky Aircraft*, 106 Fed. Cl. at 576 (citing *Mobil Oil Corp. v. Department of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y 1983)) (additional citations omitted).  Substantively, the government must show that the allegedly privileged material is both pre-decisional and deliberative.  Material is pre-decisional if it addresses activities "antecedent to the adoption of an agency policy," *Walsky Constr. Co. v. United States,* 20 Cl. Ct. 317, 320 (1990) (quoting *Jordan v. Department of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)), or "reflect[s] the personal opinion of the writer, rather than the policy of the agency," *Pacific Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 133 (2006) (quoting *New York ex rel. Boardman v. National R.R. Passenger Corp.*, 233 F.R.D. 259, 269 (N.D.N.Y. 2006)).  Material is considered deliberative if it "contain[s] decisional information . . . [that is] part of the deliberative process in that it makes recommendations or expresses opinions on legal and policy matters.'"  *Walsky*, 20 Cl. Ct. at 320 (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975)).  The privilege does not extend to purely factual material "except as necessary to avoid indirect revelation of the decision making process."  *Alpha I, L.P. ex rel. Sands v. United States,* 83 Fed. Cl. 279, 288 (2008) (quoting *Pacific Gas*, 70 Fed. Cl. at 134); *see also Meyer Corp. v. United States*, 2016 WL 721949, at *3 (Ct. Int'l Trade Feb. 23, 2016) ("[F]actual material contained in deliberative documents . . . falls outside of the privilege, to the extent that it is severable.") (quoting *USX Corp. v. United States*, 11 CIT 419, 420-21, 664 F. Supp. 519, 522 (1987)).

The qualified nature of the deliberative process privilege stands in contrast to the forms of executive privilege which compel the court to observe a "high degree of deference."  *Nixon*, 418 U.S. at 710-11 (discussing the national security privilege); *see also Marriott Int'l Resorts*, 437 F.3d at 1307 ("Of most importance, the state secrets privilege is an absolute privilege; the deliberative process privilege is not.").  The court must balance the interests of the parties for and against disclosures.  *See Deseret Mgmt. Corp. v. United States*, 76 Fed. Cl. 88, 96 (2007) (quoting *Scott Paper Co. v. United States*, 943 F. Supp. 489, 496 (E.D. Pa. 1996)).  "A showing of compelling need can overcome the qualified deliberative process privilege."  *Marriott Int'l Resorts*, 437 F.3d at 1307 (citing *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997)); *see also Dairyland Power Coop. v. United States*, 77 Fed. Cl. 330, 337-39 (2007) (addressing the evidentiary showing necessary to overcome an assertion of the deliberative process privilege and identifying five factors commonly considered in that balancing calculus).  Additionally, the privilege may be waived if the government produces documents related to the privileged subject matter or produces the privileged material in other litigation.  *See Alpha I*, 83 Fed. Cl. at 290-91.

## ANALYSIS

### I.      Invocation of the Deliberative Process Privilege

As noted *supra*, the government must comply with a series of procedural requirements to properly invoke the deliberative process privilege: (i) the head of an agency or a properly chosen subordinate must invoke the privilege; (ii) the agency head or delegate must specifically identify which records are subject to the privilege; and (iii) the agency head or delegate must provide specific reasons for withholding the requested document.  *See Sikorsky Aircraft*, 106 Fed. Cl. at 577 (citing *Pacific Gas*, 70 Fed. Cl. at 134-35) (additional citations omitted).

To meet the first procedural requirement, the agency head or delegate may only invoke the privilege after "thorough" and "personal review."  *Marriott Int'l Resorts*, 437 F.3d at 1307. On September 24, 2020, the government served plaintiffs "with its privilege log identifying documents withheld under the deliberative process privilege, and its supporting declaration of Lieutenant General Scott A. Spellmon."  Def.'s Resp. at 4.  Lieutenant General Spellmon, the "Chief of Engineers and Commanding General of the United States Army Corps of Engineers," invoked the deliberative process privilege in his declaration as to the draft documents and appendices of the Study.  Decl. of Lieutenant General Scott A. Spellmon ("Spellmon Decl."), ECF No. 335-1, at 1-2.  The level of detail in the declaration reveals that Lieutenant General Spellmon has a thorough understanding of the Corps' work at the Buffalo Bayou & Tributaries, and that he has "personally reviewed" draft documents at issue.  *Id*. at 9.  He examined the documents himself and "received a personal briefing from the USACE Office of the Chief Counsel" concerning the status of the Corps' work on the project.  *Id*.  The first factor has been satisfied.

The second procedural requirement for invoking the privilege is also met, as Lieutenant General Spellmon specifically identifies and describes the "Draft Combined Feasibility Report and Environmental Impact Statement Report and Appendices," as well as the "Draft Appendices to [the] Draft Interim Feasibility Report" as the documents subject to the asserted privilege. Spellmon Decl. at 10-11 (internal quotation marks omitted).  As for the third procedural requirement, Lieutenant General Spellmon "provide[s] reasons for maintaining the confidentiality of [the draft documents]."  *Sikorsky Aircraft*, 106 Fed. Cl. at 576 (citations omitted).  He asserts that "[t]he draft documents reflect the internal, pre-decisional deliberation among the [Buffalo Bayou & Tributaries Resiliency Study ("BBTRS")] team in preparing a selection of preferred alternatives to be presented and approved within the BBTRS team . . . ." Spellmon Decl. at 9.  Spellmon further notes that "the complex issues and problems that the Study will attempt to address are controversial and politically sensitive," and that "[t]he drafts contain information that could be factually inaccurate or misleading in that [they do] not necessarily reflect official USACE positions . . . ."  *Id.* at 10-11.  Therefore, the government satisfies all procedural requirements for invocation of the privilege.

II.      *The Privileged Status of the Buffalo Bayou & Tributaries Resiliency Study and its Appendices*

A.   *Pre-Decisional and Deliberative*

To successfully invoke the deliberative process privilege, the government must also meet substantive requirements.  First, the government must show that the records are both pre-decisional and deliberative.  Factual segments of documents are protected from disclosure only if they are not "purely factual;" in other words, facts will be protected only if "the manner of selecting or presenting those facts would reveal" the deliberative process of the agency, or "if the facts are inextricably intertwined with the policy-making process." *Jowett, Inc. v. Department of Navy*, 729 F. Supp. 871, 877 (D.D.C. 1989) (quoting *Ryan v. Department of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980) (internal quotation marks omitted).  Thus, whether a portion of material within a document is factual is not dispositive.  "[F]acts contained in documents related to an agency's decision-making process 'must be considered within the context of the document as a whole, and within the context of the document as part of the agency's overall decision-making process.'" *Sikorsky Aircraft*, 106 Fed. Cl. at 578 (quoting *In re United States*, 321 Fed. Appx. 953, 959 (Fed. Cir. 2009)).

Here, the draft Geotechnical Engineering Appendix disclosed to plaintiffs by the Harris County Flood Control District on October 12, 2020, provides insight into the documents withheld by the government.  *See* Pls.' Notice of Submission Ex. 1 ("Draft Appendix"), ECF No. 348-1.  Similar to the interim report published by the Corps in October 2020, the appendix addresses the purpose, scope, and location of the Study, as well as the geology of the area and structural composition of the Addicks and Barker Dams.  *Compare* BBTRS Interim Report (part 1) at i, ECF No. 347-1, *with* Draft Appendix at ii.  These pages consist of factual material regarding the Corps' work at Buffalo Bayou and Tributaries.  The most significant difference between the publicly issued report and the disclosed appendix is that the documents consider different alternatives to address problems identified by the Corps.  The interim report identifies and describes various "[a]nchor measures," which are proposed solutions "that could achieve the largest potential for reducing flood risk."  BBTRS Interim Report (part 1) at 70-73; BBTRS Interim Report (part 2) at 74-89, ECF No. 347-2.  The draft appendix considers alternatives such as constructing a new reservoir and implementing channel improvements of the existing Buffalo Bayou.  *See* Draft Appendix at 5-25 to 5-36.  The BBTRS team which compiled the draft appendix ultimately concludes that it "prefers and recommends" a given alternative.  *Id.* at 5-36.

The team's statement that it "prefers and recommends" a certain "dam safety measure" and the reasoning behind it, Draft Appendix at 5-36, are pre-decisional, as they "reflect the personal opinion of the writer[s], rather than the policy of the agency," *Pacific Gas*, 70 Fed. Cl. at 133 (quotation omitted).  Given the fact that this document is a draft, the team's ultimate conclusion as to the proper safety measure cannot be viewed as equivalent to the policy of the Corps as a whole.  The team's statement and rationale are also deliberative in that they make a "recommendation[] . . . on legal and policy matters."  *Walsky*, 20 Cl. Ct. at 320 (quotation omitted).

The presence of some material that falls within the scope of the deliberative process privilege, however, does not require the entire body of work containing the arguably privileged material to be withheld.  While portions of the appendix containing facts may still fall within the protection of the deliberative process privilege, it is evident that the majority of the factual material in the draft appendix is not "inextricably intertwined with" the team's recommendation to address the threat of future flooding as well as the underlying rationale for the recommendation.  *Jowett, Inc.*, 729 F. Supp. at 877.  The draft appendix mirrors the published report's format in outlining the purpose, scope, and location of the study before describing various potential solutions to flooding in the Bayou and Tributaries.  *See* Draft Appendix at ii-iii. To be sure, the facts provided as reasons for the team's recommendation, *see* Draft Appendix at 5-36, may be covered by the privilege "to avoid indirect revelation of the decision making process," *Alpha I*, 83 Fed. Cl. at 288 (quoting *Pacific Gas*, 70 Fed. Cl. at 134).  The proper way for the government to address concerns regarding the disclosure of these facts, however, is to produce the draft documents with redactions, not to withhold them completely.[2]  To the extent that the draft documents contain facts that do not reveal the team's rationale for its recommendation, they fall outside of the scope of the deliberative process privilege.

## B.  Balancing the Parties' Competing Interests

Although the government has established that the deliberative process privilege applies to portions of the draft documents, the privilege is nonetheless qualified, and the court must balance the interests of the parties.  *Deseret Mgmt. Corp.*, 76 Fed. Cl. at 96.  "The privilege will yield to the plaintiff's evidentiary need if the need outweighs the harm that disclosure of such information may cause to the defendant." *Sikorsky Aircraft*, 106 Fed. Cl. at 579 (quotation omitted).  Courts may take the following factors into consideration when balancing the parties competing interests:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the "seriousness" of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

---

[2] The government broadly claims privilege as to factual appendices of the draft.  *See* Def.'s Resp. Ex. A Attach. 1, ECF No. 335-1 (Deliberative Process Privilege Log).  That is improper.  Those appendices include Appendices A1 ("Hydraulics and Hydrology"), A2 ("Calibration Validation Results"), A3 ("PMF Load Curve"), A4 ("ResSim"), A5 ("Climate Change Assessment"), B ("Geotechnical"), C1 ("Civil/Structural/Mechanical"), C2 ("Maps and Plates"), D ("Cost"), E ("Economics"), F ("Real Estate"), and H ("Dam Safety").  *Id.*  The court recognizes that portions of these appendices, particularly A4, D, and E, may contain recitations that disclose deliberative elements of the Corps' continuing analysis.  The government may redact any such elements.  If plaintiffs challenge any redactions, the court stands ready to consider the contested portions *in camera*.

*Dairyland Power*, 77 Fed. Cl. at 338 (quoting *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992)). Courts have also noted that when the government is a party and asserts the privilege, the "[g]overnment's stake in [the] litigation means that its invocation of the deliberative process privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope." *Id.* at 342.

Here, the first factor weighs in favor of the government. While the factual information provided in the draft documents, such as "data directly relevant to the Upstream flood risk," Pls.' Reply at 3, is relevant to the plaintiffs' arguments for the just compensation phase of this case, the conclusions and rationale subject to the deliberative process privilege appear to be segregated or segregatable from the majority of the data. Allowing disclosure with appropriate redactions will provide plaintiffs with access to the data while preserving the Corps' right to protect internal "recommendations" and "opinions on legal and policy matters." *Walsky*, 20 Cl. Ct. at 320 (quotation omitted). The second factor also weighs in favor of the government, as plaintiffs already have access to the interim report published by the Corps in October 2020.

The third factor favors neither party. The case is "serious," as the court has determined that the government is liable for just compensation, and the large number of plaintiffs alludes to the substantial damages sought. The fourth factor weighs in favor of plaintiffs, because the government's invocation of the privilege must be "carefully scrutinized." *Dairyland Power*, 77 Fed. Cl. at 342. The fifth factor, however, establishes that the government's assertion of the privilege is valid as to the antecedent analysis in the draft documents. "Disclosure of government employees' correspondence . . . could lessen employees' willingness to have a full and frank discussion[,] . . . thereby sapping the process of robust debate and collaborative analysis . . . ." *Sikorsky Aircraft*, 106 Fed. Cl. at 579. The portions of the draft documents and appendices containing the authors' conclusions and rationale are therefore protected by the deliberative process privilege.

### *C. The Protective Order and the Deliberative Process Privilege*

In arguing for the full disclosure of the draft documents and appendices, plaintiffs assert that the protective order in this case, Order of March 1, 2018 ("Protective Order"), ECF No. 81, obviates the government's concerns regarding disclosure of privileged materials. *See* Pls.' Mot. at 3-4; Pls.' Reply at 14-15. The protective order itself, however, states that it does not require the production of information protected by an applicable privilege. *See* Protective Order ¶ 21. Moreover, the release of material disclosing the authors' recommendation and analysis for a tentatively selected plan "that is not at this point the Corps' official position" would undermine the exact deliberations the privilege is designed to protect. Hr'g Tr. 82:19-24. The existence of a protective order is relevant to balancing the need of the plaintiffs against the potential harm to the government, but it does not defeat an assertion of the deliberative process privilege. *See, e.g.*, *Dairyland Power*, 77 Fed. Cl. at 344.

### D. Waiver

Plaintiffs also argue that the government has "waived any claim to the [deliberative process] privilege by voluntarily providing the documents to the Harris County Flood Control District, which then provided the documents to their own non-governmental third-party consultants." Pls.' Reply at 2 (emphasis removed). The government contends that plaintiffs waived this argument by failing to raise it in their initial motion to compel, and that even if plaintiffs did not waive the argument, the Corps' disclosure of documents to the District does not amount to a waiver of the deliberative process privilege. Def.'s Sur-Reply at 3-8.

To the extent that plaintiffs did not waive this argument by failing to include it in their motion, *see Hitkansut LLC v. United States*, 127 Fed. Cl. 101, 112 n.5 (2016) (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)), they fail to persuade. The government may waive the deliberative process privilege by disclosing the privileged material in the present case or in other litigation. *See Alpha I*, 83 Fed. Cl. at 290-91. "A voluntary disclosure . . . to unnecessary third parties waives the deliberative process privilege as to the document or information specifically released." *Citizens for Resp. & Ethics in Washington v. Department of Com.*, 2020 WL 4732095, at *2 (D.D.C. Aug. 14, 2020) (quoting *In re Sealed Case*, 121 F.3d 729, 741 (D.C. Cir. 1997)) (internal quotation marks omitted). The Corps' disclosure of draft documents and appendices to the District, however, cannot be characterized as "voluntary" or "unnecessary." As noted by the government, *see* Def.'s Sur-Reply at 4-5, the Corps was mandated by law to engage a non-federal sponsor in proceeding with the resiliency study, *see* 33 U.S.C. § 2215(a)(1)(A) ("The Secretary shall not initiate any feasibility study for a water resources project after November 17, 1986, until appropriate non-Federal interests agree, by contract, to contribute 50 percent of the cost of the study."). Finding waiver whenever a federal agency is required by law to collaborate with a non-federal organization would pose an overly broad limitation on assertions of the deliberative process privilege.

Furthermore, the District's disclosure of the draft documents and appendices to outside consultants does not amount to a waiver of the privilege, as a proper assertion of the privilege encompasses the work of such consultants. *See, e.g.*, *Klamath Water*, 532 U.S. at 10 (noting various cases in which "the records submitted by outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done"). The outside consultants' "only obligations are to truth and [their] sense of what good judgment calls for, and in those respects the consultant[s] function[] just as . . . employee[s] would be expected to do." *Id.* at 11. Therefore, neither the government's disclosure of the draft documents and appendices to the District nor the District's subsequent sharing of the same with third-party consultants amounts to a waiver of any privileged material within the draft documents and appendices.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel the production of the documents constituting a draft of the Buffalo Bayou & Tributaries Resiliency Study and its appendices is GRANTED in part and DENIED in part. The motion is granted as to factual material contained within the draft documents that does not reveal the recommendations or conclusions of the

authors of the draft.  The motion is denied to the extent that it requests the antecedent analysis and recommendations found in the Draft Appendix and other draft materials.[3]

It is so **ORDERED**.


s/ Charles F. Lettow
Charles F. Lettow
Senior Judge

---

[3] The court requires clawback of the deliberative portions of the Draft Appendix provided to plaintiffs by the Harris County District, but not the factual portions.