## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

In re UPSTREAM ADDICKS AND BARKER
(TEXAS) FLOOD-CONTROL RESERVOIRS

Sub-Master Docket No. 17-9001L

THIS DOCUMENT APPLIES TO:

Judge Charles F. Lettow

ALL UPSTREAM CASES

## REMAINING MASTER COMPLAINT PLAINTIFFS'
## REPLY IN SUPPORT OF CLASS CERTIFICATION

Daniel H. Charest
E. Lawrence Vincent
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com
  *Co-Lead Counsel, Upstream Pre-Trial
  Discovery and Dispositive Motions*

  *Co-Lead Counsel for Upstream Plaintiffs
  as to Jurisdictional Discovery, Motion to
  Dismiss, and Scheduling*

Charles Irvine
IRVINE & CONNER PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
charles@irvineconner.com
  *Co-Lead Counsel, Upstream Pre-Trial
  Discovery and Dispositive Motions*

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ........................................................................................................................... 3

I.      The Court correctly concluded that three of the RCFC 23 requirements for certification—numerosity, commonality, and typicality—were met. ........................... 3

II.      The remaining two RCFC 23 requirements for certification—adequacy of representation and superiority—are met by the Remaining Plaintiffs' Motion. ........... 4

     A.      Movants are adequate Class Representatives. ...................................................... 4

     B.      Certification of a liability-only class is superior to all other available methods for fairly and efficiently adjudicating the thousands of pending (and potential) claims against the government. ................................................... 8

III.      The United States is wrong: class certification is not forever precluded because the Court found the government liable for the Bellwether Plaintiffs' claims. ............... 9

     A.      Certification is not precluded by the Bellwether Plaintiffs' liability win. ........ 10

     B.      Every motion for certification should not now be deemed untimely. ............. 13

     C.      Certification would not create the hardships posited by the government. .... 15

CONCLUSION ...................................................................................................................... 17

CERTIFICATE OF SERVICE .................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*A. C. Aukerman Co. v. R.L. Chaides Const. Co.,*
960 F.2d 1020 (Fed. Cir. 1992) ...................................................................................... 11

*Amchem Prods. Inc. v. Windsor,*
521 U.S. 591 (1997) .......................................................................................................... 5

*Arkansas Game & Fish Comm'n v. United States,*
568 U.S. 23 (2012) ..................................................................................................... 16, 17

*Bright v. United States,*
603 F.3d 1273 (Fed. Cir. 2010) ...................................................................................... 17

*Cedar Point Nursery v. Hassid,*
141 S. Ct. 2063 (2021) .................................................................................................... 16

*Globe Sav. Bank, F.S.B. v. United States,*
74 Fed. Cl. 736 (2006) .................................................................................................... 11

*Goodeagle v. United States,*
128 Fed. Cl. 642 (2016) .................................................................................................. 12

*Greenberg v. Bear Stearns & Co.,*
80 F. Supp. 2d 65 (E.D.N.Y. 2000) ............................................................................... 13

*Haggart v. United States,*
89 Fed. Cl. 523 (2009) ...................................................................................................... 4

*Hiser v. Franklin,*
94 F.3d 1287 (9th Cir. 1996) .......................................................................................... 11

*In re Citizens Bank, N.A.,*
15 F.4th 607 (3d Cir. 2021) ...................................................................................... 11, 13

*In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs,*
146 Fed. Cl. 219 (2019) ............................................................................................ 16, 17

*Jamesbury Corp. v. Litton Indus. Prod., Inc.,*
839 F.2d 1544 (Fed. Cir. 1988) ...................................................................................... 11

*Media Techs. Licensing, LLC. v. Upper Deck Co.,*
334 F.3d 1366 (Fed. Cir. 2003) ...................................................................................... 10

*Silver Buckle Mines, Inc. v. United States,*
132 Fed. Cl. 77 (2017) ...................................................................................................... 5

*Smith v. Bayer Corp.,*
564 U.S. 299 (2011) ........................................................................................................ 11

*Washington v. Vogel,*
158 F.R.D. 689 (M.D. Fla. 1994) ..................................................................................... 7

**Other Authorities**

C. Wright, A. Miller & E. Cooper, FED. PRAC. & PROC. CIV. § 4401 (3d ed. April 2021 update) ...... 10

William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 18:30 (5th ed. Dec. 2021 update) ............... 11

William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 18:47 (5th ed. Dec. 2021 update) ............... 12

**Rules**

Fed. R. Civ. P. 23(b)(2) ................................................................................................................. 7

Fed. R. Civ. P. 23(b)(3) ................................................................................................................. 7

RCFC 12(i) ................................................................................................................................... 6

RCFC 23 .............................................................................................................................. passim

**Statutes**

28 U.S.C. § 1292(c) ..................................................................................................................... 10

28 U.S.C. § 2501 ......................................................................................................................... 17

## INTRODUCTION

On September 24, 2021, a group of the Test Property plaintiffs (most of which were listed in the Master Amended Complaint for Upstream Plaintiffs and some of which were selected by the government) filed a motion seeking class certification on liability. *See* ECF 397. The government initially took the position that those movants could not yet file their motion because the administrative stay—which has been in place continuously since February 1, 2018—prevented a motion for class certification. *See* ECF 398 (arguing class certification was too early); *see also* Hearing Tr. (Oct. 1, 2021), at 8:17-9:11 ("THE COURT: . . . Ms. Tardiff, do you honestly think that we have to lift a stay before we can do anything? MS. TARDIFF: Well, Your Honor, that was our read of the proceedings in this case . . . ."). Then the government contended the exact opposite: that the initial motion for class certification was too late. *See* ECF 405 (arguing class certification was too late). Ultimately, the Court credited the government's second position on timing (that those movants were too late) and denied that motion for class certification because the class motion came <u>after</u> the movants' liability trial and decision. *See* ECF 417.

Notably, the Court found that—except the timing of seeking class certification—each of the elements of RCFC 23 had been satisfied. *See* ECF 417, at 6 ("The timing of plaintiffs' class certification motion also bears heavily on the court's analysis of RCFC 23's multiple requirements, even if the court were to not treat it as an independent ground to deny certification. While plaintiffs succeed at showing numerosity, commonality, and typicality, they fail to show how the timing of their motion would not undermine the adequacy of representation and superiority of class certification at this late stage."). Thereafter, those plaintiffs who were listed in the Master Amended Complaint for Upstream Plaintiffs

1

but not selected as Test Property Plaintiffs, filed a motion to certify essentially the same liability-only class as the initial movants.[1] *See* ECF 420 (the "Remaining Plaintiffs' Motion").

Abandoning any pretense of a substantive response, the government asserts "[n]othing had changed" from one motion to the next. ECF 428, at 1. The government attempts to paint the Remaining Plaintiffs' Motion with the same brush as the initial class certification motion. But the government is completely wrong. The core reason the Court denied the initial motion—the movants having established liability before seeking class certification—does not exist with respect to the Remaining Plaintiffs' Motion. Movants were not selected as Test Property Plaintiffs and, therefore, did not established pre-certification liability against the government. That is the critical difference.

Pushing the Court's ruling beyond its rationale for denying certification, the government urges the Court to conclude that <u>any</u> class certification is now too late—regardless of why. Raising complaints of phantom "unfairness to the United States," ECF 428, at 1, and unfounded assertions of "delay" by Movants, ECF 428, at 11, the government simply opposes any class—regardless of merits or rationale. And the government's position, if credited, would foreclose any class certification for the upstream flood victims. That result is both untenable and unsupported by any authority.

The Court's ruling recognized that all RCFC 23 requirements for certification of the liability issue class had been met <u>except</u> two which were impacted by the fact that those movants had already established the government's liability. Movants in the Remaining Plaintiffs' Motion do not suffer that core defect: they stand ready to advance the class claims to a new and complete adjudication on the merits of liability. And the government's unfounded assertions of "unfairness" and allusions to "delay" do not change that. Movants cure the only defect the Court found in the initial motion, so the Court should grant the Remaining Plaintiffs' Motion and certify the liability-only class.

---

[1] Movants in the pending motion for class certification are as follows: Marina Ageyeva, Robert Rheinboldt, Glenn Peters, Mollie Kish, Scott Specksgoor, Erich Schroeder, and Sandra Rodriguez.

In essence, whereas the Bellwether Plaintiffs' motion looked to the past, the Remaining Plaintiffs' Motion looks to the future. The question before the Court is whether to litigate each remaining case one by one forever, or to determine liability once for the remaining cases through a class mechanism that it has found meets RCFC 23.

## ARGUMENT

The record presented in and through the Remaining Plaintiffs' Motion justifies certification of the liability-only class. And neither the Bellwether Plaintiffs' liability ruling nor the Court's denial of the certification request by the Bellwether Plaintiffs should preclude certification.

## I.  The Court correctly concluded that three of the RCFC 23 requirements for certification—numerosity, commonality, and typicality—were met.

In its order, the Court listed the factors to merit class certification:

> [A] putative class representative must demonstrate: (i) numerosity— that the proposed class is so large that joinder is impracticable; (ii) commonality—that there are common questions of law or fact that predominate over questions affecting individual prospective class members and that the government has treated the prospective class members similarly; (iii) typicality—that his or her claims are typical of the proposed class; (iv) adequacy—that he or she will fairly represent the proposed class; and (v) superiority—that a class action is the fairest and most efficient method of resolving the suit.

ECF 417, at 3.

The Court found that the initial motion had satisfied the requirements of numerosity, commonality and predominance, and typicality requirements on the submitted record. *See* ECF 417, at 7 ("The court therefore concludes that plaintiffs have carried their burden and have shown that the potential class members are so numerous as to render joinder impracticable."); *id.* at 9 ("The court determines that plaintiffs have satisfied the commonality requirement because they share common questions of law and fact concerning generally applicable government conduct—namely, the common claim that the operation of the Addicks and Barker Dams resulted in a taking—and those liability questions predominate over individual compensation questions."); *id.* ("The court therefore holds that

plaintiffs have carried their burden as to typicality."). The reasons for those findings apply fully to Movants and the Remaining Plaintiffs' Motion.

## II. The remaining two RCFC 23 requirements for certification—adequacy of representation and superiority—are met by the Remaining Plaintiffs' Motion.

The remaining two requirements—adequacy and superiority—were found to be lacking as to the initial motion because of the Bellwether Plaintiffs' previous success in holding the government liable for the taking of a permanent flowage easement over their property. Neither of those concerns preclude certification of the motion brought by Movants in the Remaining Plaintiffs' Motion, and the government's arguments to the contrary repeatedly contradict themselves.

### A. Movants are adequate Class Representatives.

"Adequacy asks both whether proposed class counsel is qualified and capable of representing the class and whether conflicts exist between the putative class representatives and the remaining class members." ECF 417 at 10. The government poses no challenge to the qualifications and capabilities of proposed class counsel. Rather, the government focuses on Movants. But the government's rational fails on this record.

As regards the "conflicts" question, this Court tied its prior determination that the Bellwether Plaintiffs did not meet RCFC 23's adequacy requirement to the fact that they had "succeeded at a merits phase of the trial." ECF CF 417, at 11. Notably, the Court never explained why this fact made the interests of the class representatives "antagonistic" to the remaining class. *See Haggart v. United States*, 89 Fed. Cl. 523, 534 (2009). However, to the extent the liability determination enjoyed by the Bellwether Plaintiffs led this Court to find a conflict with their prosecution of a liability finding on behalf of the proposed Class, that consideration does not apply to Class Representatives. Again, Movants stand ready to pursue a liability ruling on behalf of the Class. As the government itself concedes, "bellwether trials generally <u>never</u> have preclusive effects," ECF 428, at 21 (citations omitted, emphasis in original).

With the elimination of the Court's concern that certification could "expand the scope of the court's liability decision from thirteen plaintiffs to thousands," ECF 417, at 13, Movants are unquestionably adequate Class Representatives. The claims of Class Representatives are legally and factually typical of the putative Class Members they seek to represent. Class Representatives have no factual or legal conflicts with any putative Class Members. Indeed, Class Representatives are "part of the class and possess the same interest and suffer the same injury as the class members." *Silver Buckle Mines, Inc. v. United States*, 132 Fed. Cl. 77, 101 (2017) (quoting *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). Like all Class Members, Class Representatives suffered flooding which they have alleged to be directly due to, and intended by, the government's Project. And Class Representatives seek compensation for a Fifth Amendment taking, just as each of the Class Members do. The takings claim of each Class Member is not diminished or otherwise negatively impacted by the adjudication of the takings claims of the Class Representatives (or vice versa); nor are the Class Representatives otherwise antagonistic to other Class Members. And each Class Representative has agreed to advance the claims of Class Members along with their own claims.

On the point of timing overall, the Court's ruling suggested that an "initial deadline to move for class certification came and went," ECF 417, at 10. That is not only incorrect (respectfully) but also not a valid basis upon which to preclude invocation of RCFC 23 in this action. First, the record shows there was no deadline for filing of a class certification motion that has passed: the November 9, 2017 class certification motion deadline was vacated from the bench by then-Chief Judge Braden on November 1, 2017. *See* ECF 418, at 4-5 and Exhibit A thereto (transcript of November 1, 2017 hearing). All such events, of course, took place <u>before</u> leadership was established among plaintiffs' counsel. Master Docket No. 17-3000L, ECF 68 (appointing leadership), at 2; ECF 70, at 2 (same). And, concurrent with appointing leadership, Chief Judge Braden expressly "determined that the issue of class certification [wa]s premature at this juncture."). Master Docket No. 17-3000L, ECF 68, at 2;

ECF 70, at 2. That timeline of events is beyond dispute.[2] And statements to the contrary deserve correction in this record. *See generally* ECF 418 (identifying the record citations discussing direction from the Court about delaying class certification).

Even if then-Chief Judge Braden and this Court did not indicate an intent to <u>defer class certification</u>, *cf.* ECF 418, and even though the government initially contended that class certification was <u>prohibited</u> by the Court's 2017-imposed stay, *see* ECF 398, the government contends that the passage of time between filing suit and seeking class certification justifies denying Remaining Plaintiffs' Motion, *see* ECF 428, at 9-13. But the passage of time cannot form a *per se* basis for a complete disavowal of RCFC 23 as to each of the thousands of other claimants before this Court. Movants have not delayed in any sense—and certainly not enough to disqualify them in respect of their adequacy.

To begin, the Court has <u>never</u> set a deadline for class certification. To the contrary, the Court indicated a strong preference to address jurisdiction before addressing class certification. Hearing Tr. (Jan. 30, 2018), at 9:24-10:12 ("So the Court would <u>strongly prefer that we focus on jurisdiction first</u>, even though a lot of that would carry over to liability. <u>That might affect your thinking on class certification</u>." (emphasis added)). Then the Court deferred ruling on jurisdiction until the merits trial. *See* ECF 120, at 16 (providing that "the court elects to exercise its discretion under RCFC 12(i) and defer the resolution of this motion until trial."); ECF 260, at 3 (providing that "resolution of the government's motion to dismiss was deferred until trial"). Only <u>after</u> the liability trial—at the same time it concluded that the government had affected a taking—did the Court rule on jurisdiction. *See* ECF 260, at 3 (denying the government's motion to dismiss and the government to be liable for a

---

[2] Even the government acknowledges that the November 9, 2017 deadline to file motions for class certification was vacated at the hearing held on November 1, 2017, and that the Court's next scheduling order (of November 20, 2017) "reliev[ed] the Parties of the deadline to move for class certification and stat[ed] that it 'determined that the issue of class certification is premature at this juncture.'" ECF 405, at 9-10.

taking of a flowage easement). On this record, the Court indicated that any motion before jurisdiction would not have been well received, and no basis exists to contend that Movants delayed.

Nor is there a basis, more generally (i.e., outside the Court's instructions and schedule), to argue "delay" by Movants given the reality of the case as it proceeded. The selection of the Bellwether Plaintiffs as test property plaintiffs for all upstream cases meant all other claimants were set to the side while the bellwether process instituted by the Court played out. In that sense, Movants waited their turn, like the stayed plaintiffs. There is no reason to preclude Movants' pursuit of their claims as representatives under RCFC 23 based on a procedure in which they did not participate.[3] They had no opportunity to prosecute their claims in any form or format, so the invocation of RCFC 23's timeliness proposition (it is not a requirement and, to the contrary, wholly within the Court's discretion in any event) misses the mark. Movants stand on the same merits footing as those litigants whose actions were administratively stayed by order of the Court during the bellwether process. No substantive difference exists between a denial of Movants' right to invoke RCFC 23 and the denial of that right by the thousands of other (eventual) movants.

By any reasonable measure, Movants are adequate Class Representatives under RCFC 23.

---

[3] The Remaining Plaintiffs do not stand in the same shoes as the plaintiffs in *Washington v. Vogel*, 158 F.R.D. 689 (M.D. Fla. 1994). In *Vogel* it was the same plaintiffs who sought certification under Fed. R. Civ. P. 23(b)(3) after the court had denied a motion seeking a Rule 23(b)(2) class based on a lack of standing; and by the time plaintiffs filed their second request for certification, they had already filed multiple amended complaints, each of which only sought certification under Rule 23(b)(2). *Id.* at 691. Moreover, at the time of the second certification request, all deadlines for discovery and dispositive motions had passed and the matter was set for trial as to all claims in less than six months. *Id.* at 691-92. In contrast, Movants here are different than those who previously sought certification, no deadlines for discovery or any kind of motions practice have ever been set (much less passed) as to their claims, their claims are not set for trial (nor will certification delay or otherwise impact the current compensation trial setting for the Bellwether Plaintiffs), and as explained previously the timing of the Bellwether Plaintiffs' certification motion was not a "tactical decision [that] did not work out as planned." ECF 428, at 17.

**B.**   **Certification of a liability-only class is superior to all other available methods for fairly and efficiently adjudicating the thousands of pending (and potential) claims against the government.**

Despite the government's utter failure to articulate any prejudice, the Court's denied the initial motion for certification *inter alia* because it would be "[un]fair to the government to bind it to instantaneous class-wide adjudication of potentially thousands of plaintiffs' claims after a trial on liability on the claims of thirteen bellwether plaintiffs." ECF 417, at 12. The Remaining Plaintiffs' Motion cures that asserted unfairness because the government will have the opportunity to litigate, through the Class Representatives, the liability determination as to the Class as a whole (as there has been no finding of liability vis-à-vis Movants).[4] This avoids any "belated expansion" of the prior decision "from thirteen plaintiffs to thousands." ECF 417, at 12.

The government touts a "bellwether approach" to mean this Court should litigate and try every single individual claimant's case one by one. But that is <u>not</u> a bellwether approach. Bellwether cases are used to explore and try claims and defenses to learn information that will promote an aggregate solution to efficiently resolve the remaining cases. The government's approach would reduce "bellwethers" to simple individual trials which would serve no meaningful purpose in advancing an overall resolution of the entire docket. The government's unspoken plan is to use its unlimited resources to try individual cases *ad infinitum*. But, if the point had been to try individual cases forever, those first cases would not have been treated as "bellwethers;" they just would have been the first cases discovered and brought to trial.

This case presents neither the need, nor any practical justification, for the prosecution of each individual Class Member's claim on the pure liability issue for which certification is sought. The government's liability to the Class can be adjudicated through focused discovery; by the reexamination

---

[4] Movants note that the government has never identified prejudice in the form of arguments it could have made or defenses it could have asserted against a class. *See generally* ECF 418, at 9-11 & n.3.

of motions to dismiss and other pretrial issues as needed or desired by the Court and the parties; and a resolution through either summary judgment or a new trial on the merits which would permit the government to raise any new (or refine any prior) arguments and defenses it wishes. For all these reasons, a class action suit is a superior method of litigation because it allows the Court, in one action, to resolve the issue of whether the creation, operation, and maintenance of the Addicks and Barker Reservoirs constituted a taking in contravention of the Fifth Amendment.

Finally, on superiority, Movants echo and incorporate the initial briefing addressing and establishing the superior posture of a classwide determination of liability in this case given (1) the prohibition on applying nonmutual offensive collateral estoppel against the government; (2) the contribution to the due process rights of the thousands of putative Class Members that would be achieved by the provision of a Court-approved notice concerning of the effect of the government's actions, their legal rights to just compensation, and the applicable deadline to assert a claim; (3) the economies and conservation of resources of both the parties and the judicial system that would stem from resolving the liability question for thousands of individual inverse condemnation claims in one proceeding, rather than the decades of repetitive litigation and appeal which would tie up the resources of this Court as well as the Federal Circuit; and (4) the government's alternative case management plan, which is to finish the bellwether trials (having asserted and lost on pool-wide defenses), exhaust all possible appeals (again seeking relief on class-wide defenses), and only then, having exhausted every pool-wide defense, to perhaps "sit down" and "talk about options" regarding the remainder of the upstream flood victims. Hearing Tr. (Nov. 29, 2021), at 51:24-52:3.

III.   **The United States is wrong: class certification is <u>not</u> forever precluded because the Court found the government liable for the Bellwether Plaintiffs' claims.**

The government now says any class certification after the liability trial is too late—regardless of the movant. *See* ECF 428, at 9-13 (contending that Movants are too late because the Remaining Plaintiffs' Motion comes after a liability ruling for Bellwether Plaintiffs). And the government extends

that position to assert that any motion seeking certification from this point forward would be untimely. ECF 428, at 14-18. Neither of those assertions are correct. Nor do any concerns of prejudice raised by the Court preclude class certification for the remaining claimants who allege they were flooded during Harvey by the Project.[5]

### A.     Certification is not precluded by the Bellwether Plaintiffs' liability win.

Initially, because it is an interlocutory decision and not a final judgment, the government's assertion that the Bellwether Plaintiffs' liability determination provides an opportunity for the Remaining Plaintiffs to "opt-in to win" is baseless. "Clear rules are important if a dispute is to be settled by a single litigation." 18 C. Wright, A. Miller & E. Cooper, FED. PRAC. & PROC. CIV. § 4401 (3d ed. April 2021 update). One of those rules is that claim preclusion only attaches to a final judgment. *Id.* § 4427 ("Judicial actions must achieve a basic minimum quality to become eligible for res judicata effects. First, there must be a judgment. The traditional words used to describe this quality require that there be a judgment that is valid, final, and on the merits." (emphasis added)); *see also Media Techs. Licensing, LLC. v. Upper Deck Co.*, 334 F.3d 1366, 1369 (Fed. Cir. 2003) ("To be given preclusive effect, a judgment must be a final adjudication of the rights of the parties and must dispose of the litigation on the merits." (citing Wright and Miller treatise)).

What the government cannot provide is any authority for the proposition that a final judgment (much less interlocutory findings) in a prior individual suit bars class certification in a related matter. That authority does not exist, and for good reason. As Professor Rubenstein has noted, "in 2011, the

---

[5] Should the Court rule to the contrary and agree with the government that no class may ever be certified in this sub-master docket, Movants request the Court certify that issue, as well as its denial of certification *in toto*, for interlocutory appeal under 28 U.S.C. § 1292(c) because the arguments presented herein demonstrate that the question of whether RCFC 23 permits certification of a claim following trial of a set of bellwether plaintiffs involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate interlocutory appeal would materially advance this litigation.

Supreme Court held in *Smith v. Bayer* that one court's denial of class certification has no issue preclusive effect on different parties' later efforts to certify the same class." 2 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 18:30 (5th ed. Dec. 2021 update) (citing *Smith v. Bayer Corp.*, 564 U.S. 299 (2011)).[6]

Given the bar to applying nonmutual offensive collateral estoppel against the United State, the government's "law of the case" strawman, and the *dicta* regarding potential prejudice from *In re Citizens Bank, N.A.*, 15 F.4th 607, 621 (3d Cir. 2021), have no place in this determination.[7] The law of the case doctrine only actually <u>precludes</u> reconsideration by a court of a claim "previously rejected and affirmed on appeal." *Globe Sav. Bank, F.S.B. v. United States*, 74 Fed. Cl. 736, 740 (2006). The Federal Circuit has explained its view on the doctrine's limits:

> The law of the case is a judicially created doctrine, the purposes of which are to prevent the relitigation of issues that have been decided and to ensure that trial courts follow the decisions of appellate courts. . . . When a judgment of a trial court has been appealed, the decision of the appellate court determines the law of the case, and the trial court cannot depart from it on remand. At the trial level however, the law of the case is "little more than a management practice to permit logical progression toward judgment."

*Jamesbury Corp. v. Litton Indus. Prod., Inc.*, 839 F.2d 1544, 1550 (Fed. Cir. 1988), *overruled on other grounds by A. C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992). The rulings in

---

[6] In *Smith*, the Supreme Court rejected application of the Anti-Injunction Act to preclude class certification by a state court where the movant was a member of a prior putative class for which certification had been denied by a federal court. The original denial of certification meant "a properly conducted class action [never] existed at any time in the litigation." 564 U.S. at 315. With no certified class, there could be no preclusive effect to the prior denial—even on a later, identical motion for certification—because "[n]either a proposed class action nor a rejected class action may bind nonparties." *Id.* To preclude Movants' pursuit of their claims on behalf of the putative class because <u>other</u> parties have achieved a declaration of liability would also have significant due process concerns. *See Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) (noting that "several of the cases holding that class members' subsequent damages claims are not barred [by related injunctive relief] have relied on notions of due process").

[7] In its decision, the Third Circuit expressly acknowledged that it was not determining "whether class certification is . . . possible after a trial on the merits has already taken place," or "whether there could be circumstances under which an FLSA trial might reasonably proceed prior to class certification in a parallel Rule 23 action." 15 F.4th at 621. The government ignores this statement completely.

ECF 417 are not of a procedural posture such that they preclude application of RCFC 23 in this matter. Of course, the weight to be given previous discovery and evidentiary rulings rests with this Court; none can be used to "bind" either party going forward.[8]

Nor should the doctrine be applied here to the prior ruling on class certification. While the government correctly quotes *Goodeagle v. United States*, 128 Fed. Cl. 642, 648 (2016), it does not acknowledge the opinion's recognition that the doctrine is only "strictly applied when an appellate decision has been made, [requiring that] a trial court may not depart from appellate decisions on remand." *Id.* (citing Jamesbury Corp.). *Goodeagle* goes on to recognize that:

> Law of the case should <u>not</u> be applied to previous trial court decisions except when to do so would be "inconsistent with substantial justice. There are times when a trial court may depart from its own prior decisions, however "[o]rderly and efficient case administration suggests that questions once decided not be subject to continued argument..." Therefore, the law of the case doctrine should be applied to a trial court's own previous decisions in an effort to prevent redundant and continued argument, but not applied when to do so would result in injustice.

*Id.* (citations omitted). The question of whether these Movants are adequate representatives has never been determined by this court so there is no prior decision to be "followed" and no risk of any "redundant and continued argument" about that issue. Nor should a decision concerning a different set of Movants preclude this group from serving as Class Representatives; that would result in an injustice not only to these Movants but to the putative Class as well. *Greenberg v. Bear Stearns & Co.*, 80

---

[8] The preclusive effect of rulings made while litigating the Bellwether Plaintiffs' claims on those of the other *de facto* MDL litigants is far from certain As Professor Rubenstein notes, "several unique features . . . complicate the preclusive effect of MDL rulings." 2 William B. Rubenstein, Newberg on Class Actions § 18:47 (5th ed. Dec. 2021 update). "The argument for binding [MDL] constituent cases is that they were '***parties***' to the MDL. This is usually sufficient to bind a litigant because a party controls her own case. But a 'party' to an MDL—a single case among a collective of . . . constituent cases—has little control and is a 'party' only in a formal sense." 2 William B. Rubenstein, Newberg on Class Actions § 18:47 (5th ed. Dec. 2021 update) (emphasis in original).

F. Supp. 2d 65 (E.D.N.Y. 2000) (finding one proposed class representative inadequate because a prior arbitration award precluded their claim but proceeding with class claims using other representatives).

### B.       Every motion for certification should not now be deemed untimely.

Fundamentally, the government argues that no matter what their circumstance, any claimant who might have wanted to seek class treatment in this sub-master docket should have already done so—despite the Court's decision to employ the bellwether process. But such a process would have been inefficient for all involved: the claimants, the government, and the Court itself. Not only would such a previous motion created parallel proceedings (assuming the Court would have lifted its administrative stay to permit the filing of a certification motion by non-bellwether movants), it would have increased the work of everyone involved, potentially caused conflicts and delays in obtaining discovery between the two proceedings, and likely significantly increased costs for both sides as they simultaneously worked two litigation dockets with possibly different sets of witnesses and experts.[9]

The government characterizes the current motion as providing a "win-win" scenario for any remaining claimants who choose to opt-in to a certified class, effectively accusing Movants of sideline sitting. *See* ECF 428, at 16 (citing *Citizens Bank*, 15 F.4th at 621). As non-mutual offensive collateral estoppel cannot be asserted against the United States, the Class will start from scratch as a legal matter. But the Class, the government, and the Court will benefit from what was learned in pursuing the Bellwether Plaintiffs' claims in terms of witnesses, evidence, etc. That fulfills the purpose of the bellwether approach and eradicates any assertion that certification "offers none of the same benefits of economy or time" as if a class had been certified previously. ECF 428, at 26.

---

[9] Nor is the government correct that "the burden to resolve every one of the individual plaintiffs' claims" one by one—despite their repetitive nature—is a unique form of drudgery this Court must endure. ECF 428, at 21 (asserting that the task of severally determining every issue in every claim before it "is not an issue exclusive to this case—it is inherent in every case filed in the Court of Federal Claims"). The government's argument reads RCFC 23 into oblivion.

The government extends its erroneous "sideline sitting" argument by asserting that if the Bellwether Plaintiffs had <u>lost</u> their liability trial, the victory would have been immaterial. *See* Doc 428 at 16 ("Plaintiffs have now had the benefit of a completed trial to base their decision on whether to move for certification or whether to proceed individually, <u>despite their taking on none of the risks involved in trial</u>." (emphasis added)). That is simply wrong. The Movants (along with all other claimants) faced significant risk vis-à-vis the outcome of the Bellwether Plaintiffs' liability trial. If the Bellwether Plaintiffs had lost, that decision would have had a practical impact on all future cases in precisely the same way the Bellwethers Plaintiffs' win does: the parties have learned a significant amount about the witnesses, evidence, and viability of legal positions taken. Indeed, the government sought rulings based on rationales that applied to all upstream flood victims, which belies the assertions that Movants (like all non-Bellwether Plaintiffs) bore no risk from prior proceedings.

Nor does the discovery or motions work done to date preclude class certification. Assuming the case is certified, the government will be able to undertake discovery regarding Movants (in their capacity as representatives of all putative Class Members), and then defend itself against <u>all</u> Class Members' claims, which results in the government getting a second bite at the liability apple. That should be enough. The government should not be given an independent bite at thousands of apples via a liability trial of each upstream flood victim. Such a process—which is what the government proposes—would eradicate any benefit from the bellwether process.

While the government implores this court to "avoid litigation inefficiencies," ECF 428, at 11, it is actually asking is for this Court to jettison the benefits obtained through the initial bellwether procedure, and render the prior work done in this case irrelevant to all other cases—which the government's brief initially admits is <u>not</u> what the Court intended. *See* ECF 428, at 2 (stating that "the Court entered a Case Management Order which established that a manageable number of bellwether properties shall be identified and designated as Test Properties, <u>such that they might provide a factual</u>

basis for disposition of jurisdictional issues, and potentially of fundamental liability issues, in these upstream cases." (cleaned up, and citing ECF No. 37, at 2 (emphasis added))). The government's approach trivializes all the work the parties and the Court have put in over the past four years, rendering the "bellwether" concept meaningless.[10]

### C. Certification would not create the hardships posited by the government.

The government puts forth a variety of "problems" it asserts certification would cause which somehow render conducting thousands of autonomous trials on the same legal and factual questions a superior approach to a determination of whether its single project caused a taking by flooding a given geographic area during a single weather event.

*First,* the government's assertion that the parties and the Court must undertake the process of preparing and providing notice to Class Members prior to conducting the Bellwether Plaintiffs' just compensation trial in March is false. The timing and schedule of providing notice is at the discretion of the Court. If anything, a determination of certification would enhance the efficient resolution of this matter by allowing appellate review of the certification decision simultaneously with the anticipated appeal of the Bellwether Plaintiffs' claims following entry of final judgment on those cases.

*Second,* how could the (1) reopening of merits discovery, (2) issuance of new discovery scheduling orders, (3) setting of new dispositive motion deadlines, (4) conduct of hearings on summary judgment motions, and (5) conducting a class-action trial **once** be less efficient (or an inferior process)

---

[10] Equally incorrect is the government's assertion that the motion by Remaining Plaintiffs is merely "a second request to reconsider the Court's denial of class certification." ECF 428, at 11. The Bellwether Plaintiffs' reconsideration motion asked that a plainly erroneous factual statement (that a deadline for seeking certification had passed) be corrected, that the Court consider its own statements (and those of its predecessor) with respect to the timing of certification, and that the motion be reconsidered following that change. *See generally* ECF 418. The Remaining Plaintiff's Motion is different. While the Remaining Plaintiffs' Motion seeks the same Class as the initial motion (including as to those aspects of the RCFC 23 inquiry the Court found satisfied on this record), the current Movants do not "suffer" from the possession of a liability decision in their favor. With that barrier removed, no obstacle to certification exists. To contend as the government does, there is no difference ignores reality.

than going through that same process, and repeating those same steps, **thousands of times**? And for which <u>each time</u> the Court would "toss aside much of the work accomplished over the last four years . . . and return to square one." ECF 428, at 24.

  ***Third,*** the government's contention that certification "adds administrative complexity" or could cause "confusion" because not all claimants will opt into the Class turns its prior arguments on their head. Even if only half of the Harvey flood victims opt into the Class, regardless of whether the Class wins or loses on liability, any judgment in the Class's trial would eliminate half of the <u>individual</u> liability trials the government asks this Court to conduct (even if every claimant's damages must be adjudicated separately). The "efficiency" achieved through the use of a short-form complaint to file an action is not lost with certification. Whatever lost efficiency the government contemplates is <u>dwarfed</u> by the efficiency achieved through an aggregate liability determination.

  ***Fourth,*** the government is simply wrong when it argues that a liability determination requires property-specific analyses which would result in an infinite number of subclasses. The government's liability for the taking of a <u>permanent</u> flowage easement triggered by the <u>physical</u> inundation of claimants' properties is certainly capable of classwide proof. *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021) ("[T]he government likewise effects a physical taking when it occupies property— say, by recurring flooding as a result of building a dam. These sorts of physical appropriations constitute the 'clearest sort of taking,' and we assess them using a simple, *per se* rule: The government must pay for what it takes.") (citations omitted); *see also In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 146 Fed. Cl. 219, 246 (2019) (noting that "there are some bright-line rules" in takings jurisprudence and citing *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31 (2012) ("[W]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." citation omitted)). Even though this Court declined to certify the class in the initial motion, the Court recognized the government was wrong to

contend that individual analyses forbade a class certification. *See* ECF 417, at 6 (providing "plaintiffs succeed at showing numerosity, commonality, and typicality").

Even the factors set forth in *Arkansas Game and Fish Commission v. United States*, 568 U.S. 23, 38-39 (2012), addressing a temporary physical taking by government-induced flooding are assessed based on objective criteria. *E.g.*, *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 146 Fed. Cl. at 249-50 (noting that "when the taking is one of a permanent nature, as it is here, the time and duration of the invasion is essentially undisputed and manifestly supports the finding of a taking"); *id.* at 250-53 (discussing various aspects of the severity analysis and noting that while differing circumstances among claimants might be relevant to assessing the quantum of compensation each is owed, "that has little bearing on whether the government effected a taking initially"); *id.* at 253 ("foreseeability is an objective inquiry"); *id.* at 261 (while the assessment of a landowner's reasonable investment-backed expectations "is a fact-intensive inquiry, it is nonetheless an objective one"). The government was and remains incorrect that factors unique to each claimant preclude certification.

**Finally**, and incredibly, the government argues that certification would violate considerations of "fundamental fairness, as well as the orderly administration of justice" because it should not "remain indefinitely uncertain as to the bedrock litigation fact of the number of individuals or parties to whom [it] may ultimately be held liable for money damages." ECF 428, at 26. That concern too actually cuts in favor of certification. The Bellwether Plaintiffs' motion for certification completed the requirements set forth in *Bright v. United States*, 603 F.3d 1273 (Fed. Cir. 2010), for a tolling of the 28 U.S.C. § 2501 limitations period. Absent certification, and an opt-in deadline, the period during which the government faces significant exposure to cases yet-to-be-filed.

## CONCLUSION

The benefits gained through the work done to date should not be jettisoned. To the contrary, the work done over the past years, and the benefits of that work, should be exponentially multiplied

by granting Remaining Plaintiffs' Motion and certification of the Class. With focused discovery on the claims of the proposed Class Representatives, an aggregate solution to the question of liability for <u>all</u> remaining claimants can be achieved efficiently—as contemplated under RCFC 23.

And while the government urges continuation of the bellwether (individual trials) process, there is no actual reason to believe it will result in an "informed resolution" of the entire sub-master docket: to the contrary, the best endgame the government's plan offers for aggregate resolution is to perhaps "sit down" and "talk about options" regarding the remainder of the upstream flood victims. Hearing Tr. (Nov. 29, 2021), at 51:24-52:3. But that is no plan at all.

None of the usual prudential or economic considerations that influence a settlement dynamic in private civil litigation exist when litigating against the United States. The work on and trial of the liability issues underlying the Bellwether Plaintiffs' claims has equipped the parties and the Court with information and data which can "inform" the government concerning an aggregate solution for the thousands of cases pending in this master sub-docket; and those cases will soon serve that same purpose regarding the just compensation question. None of those benefits will be lost upon certification of the requested class.

Certification is the logical next step for this case.

Dated: January 18, 2022

Respectfully submitted,

*/s/ Daniel H. Charest*

Daniel H. Charest
E. Lawrence "Larry" Vincent
Burns Charest LLP
900 Jackson Street, Suite 500
Dallas, Texas 75202
469-904-4550
dcharest@burnscharest.com
lvincent@burnscharest.com
    *Co-Lead Counsel, Upstream Pre-Trial Discovery*
    *and Dispositive Motions*
    *Co-Lead Counsel for Upstream Plaintiffs as to*
    *Jurisdictional Discovery, Motion to Dismiss, and*
    *Scheduling*

Charles Irvine
Irvine & Conner PLLC
4709 Austin Street
Houston, Texas 77004
713-533-1704
charles@irvineconner.com
    *Co-Lead Counsel, Upstream Pre-Trial Discovery*
    *and Dispositive Motions*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing instrument was served on all counsel of record in this Sub-Master Cause by filing it via the Court's ECF system on January 18, 2022.

*/s/ Daniel H. Charest*

Daniel H. Charest