# In the United States Court of Federal Claims

In re UPSTREAM ADDICKS AND
BARKER (TEXAS) FLOOD-CONTROL
RESERVOIRS

———————————————

THIS DOCUMENT APPLIES TO:
LUO  v.  USA
Case No. 17-1868
LEI et al  v.  USA
Case No. 17-1937
QIU et al v.  USA
Case No. 17-2035
XU et al  v.  USA
Case No. 17-2045

———————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Sub-Master Docket
No. 17- 9001L

Judge Charles F. Lettow

## <u>PRO SE PLAINTIFFS' MOTION TO RECONSIDER DENIAL</u>
## <u>OF RE-CLARIFICATION</u>

1.  Zheng Luo, ProSe Plaintiff, Case No. 17-1868, coinverso@hotmail.com, 7137398295;

2.  Ligang Lei, ProSe Plaintiff, Case No. 17-1937, ligang.lei@gmail.com, 5176483656;

3.  Huajing Yang, ProSe Plaintiff, Case No. 17-1937, ligang.lei@gmail.com, 5172822468;

4.  Shuyan Qiu, ProSe Plaintiff, Case No. 17-2035, shuyan.qiu@gmail.com, 6148047984;

5.  Yuanwei Lao, ProSe Plaintiff, Case No. 17-2035, yuanwei_lao@hotmail.com, 6143309112;

6.  Yan Xu, ProSe Plaintiff, Case No. 17-2045, ffxuyan@icloud.com, 7136790211;

7.  Qingsong Shi, ProSe Plaintiff, Case No. 17-2045, ffxuyan@icloud.com, 8323530536.

# INTRODUCTION

For the motion for re-clarification (ECF 593) filed by the pro se plaintiffs, the Court issued an order (ECF 595), in which it found first that, "that motion essentially challenges the court's grant of orders in the cases brought by named bellwether plaintiffs, among the hundreds of claimants seeking relief from the upstream flooding that occurred in the Houston area in connection with Hurricane Harvey. The pro se plaintiffs protest that their suits are individual claims and are neither governed nor affected by the claims of bellwether plaintiffs."

On the basis of that finding, the court subsequently held that, "the pro se plaintiffs will have their opportunity to press their individual claims, with their separate contentions. And that time is not now, while the judgments entered for the bellwether plaintiffs are on appeal." The final result was that the court denied the pro se plaintiffs' motion for re-clarification. But the court's finding, such as it might be, stems from an apparent misperception of the pro se plaintiffs' statement, which this motion seeks to identify.

# ARGUMENT

First and foremost, the purpose of the pro se plaintiffs' motion for re-clarification seeks to prevent the taking of permanent flowage easements on the human habitation, rather than to challenge the CMO. In a Rule-Based Society - the United States, taking a permanent flowage easement from human habitat both is lacks support of common law and is contrary to the Constitution and Congress Act, even is lacks ethics.

In this highly developed metropolitan area - Houston, its tangible and intangible wealth among the nation are considerable. The Harvey flood of 2017, although caused a loss of lives less than 1929 and 1935, and the loss of social wealth was huge. In addition to loss of huge social wealth, personal injury and sickness followed the Harvey floods, the morale of the people suffers

severely, and innumerable hardships are inflicted on those were unable to financially meet in such a catastrophe. Numerous victims with moderate or low incomes invested their lifetime savings in homes in Houston metropolitan area, and it is believed that such financial security as this property affords will be irretrievably lost if the menaced areas remain unprotected from future floods. For these reasons, the Houstonian desires a more effective flood-control improvement to protect the tangible and intangible wealth. However, this should not be a basis to take the flowage easement from a human habitat.

Taking a permanent flowage easement from human habitat both is lacks support of Common Law and is contrary to the Constitution and the Congress Act, even is lacks ethics. In the judgment of the bellwether cases, the subject properties, their property-right will be cut away a piece by taking a flowage easement. But those properties are not only general properties in the general sense, they are a part of the life of their owners and their family members; those properties carry the life, the dream and the future, of tens of thousands of families and tens of thousands of people. If those properties are subject to the burden of a permanent flowage easement, then when the next major flood comes, those owners and their households will become the victims inevitably - there will be tens of thousands victims, who created by court judgment, rather than created by an Act of God. In some degree, the flowage easement judgment will create a history.

Private property can be taken, as long as the offer is fair, and as long as for **Public Use**; People's life never can be taken, for it will make a part people's life enslaved by another part of people. That is the resurrection of slavery by wearing another dress, although bling bling. If the judgment of those six bellwether cases goes into effect, it will be version 2.0 of the Scott case, *See Dred Scott v. Sandford, 60 U.S. 393 (1856). (citation omitted)*. It will not only destroy the American property law system, but also undermine the dignity of the constitution.

In the Opinion and Order of compensation, this court held that "plaintiffs are allowed 'to

continue their lawful use subject to the risk of [occasional] flooding caused by the operation of the Addicks and Barker Dams.'" - For it is just occasional, doesn't happen very often even little. It's quite wrong. The situations of using the flowage easement little or no often actually create a false sense of security. Hence, the public will also lose vigilance, will neglect precautions, and it is precisely this kind of sudden and lack of defense disaster occurred that will cause huger damage. The false sense of security will support blind development, and many improvements will be built in a falsely safe flood area. The development history of Houston in the past 100 years perfectly proved this point. It is only when severe floods occur again with devastating effects that public interest in the flood problem is aroused again – but usually for 18 seconds; at that time, the huge consequences of the disaster are already irreversible. Therefore, the judgment of taking permanent flowage easement will create this kind of false sense of security.

Second, the pro se plaintiffs show satisfactory evidence by official records that the trial to the bellwether cases left out important factual issue - the valid Congress Authorization, and which generally shall be the necessary basis of flood taking cases. That is a common issue, rather than an individual issue; it should be examined in the six bellwether cases. The bellwether cases are not individual cases of the general sense. Those bellwether cases bear the responsibility of making the common issues clearly; otherwise the bellwether method will lose its necessity.

Here, there is no need to argue on whether the congressional authorization of 1954 made modifications to the AB reservoirs. An omission exists now, which omitted a major, common and factual issue, then the six bellwether cases should be remanded for a new trial. This kind of remand is in accordance with the provision of RCFC, and also in accordance with the rules of the Federal Circuit. *See RCFC 62.1; also see FRAP 12.1.*

The court held in the deny order that "the pro se plaintiffs [w]ill [h]ave their opportunity to press their [i]ndividual [c]laims, with their separate contents". *See ECF 595*. It will be not actually

possible in the future, for it results the multiple judgments in one case. The pro se plaintiffs hereby clarifies that what they advocate is to rehear the common issues that were omitted in the trial of the bellwether cases, again, that is not an individual issue.

Third, the pro se plaintiffs show the almost satisfactory evidence in their motion for re-clarification, indicated that the fraud, wrong, or injustice had been done to the United States, among the bellwether cases.

The Flood Control Act 701h clearly stipulates that, "the plans for any reservoir project may, in the discretion of the Secretary of the Army, on recommendation of the Chief of Engineers, be modified to provide additional storage capacity for domestic water supply or other conservation storage, on condition that the cost of such increased storage capacity is contributed by local agencies and that the local agencies agree to utilize such additional storage capacity in a manner consistent with Federal uses and purposes:" *See 33 US Code, 15, § 701h. Contributions by States and political subdivisions*.

Pursuant to provision of the Flood Control Act 701m, "Provided, That the smaller structure shall be located on the chosen site so that it will be feasible at some future time to enlarge the work in order to permit the full utilization of the site for all purposes of [conservation] [such as flood control], navigation, reclamation, the development of hydroelectric power, and the abatement of pollution." *See 33 US Code, 15, § 701m. Insufficient Congressional authorization; preparations for and modification of project*.

It is very clear provided in the Flood Control Act, the term meaning of conservation includes flood-control, and the cost of increasing the conservation capacity shall be borne by the local interests.

In the OPINION AND ORDER for compensation, the court found that -

"The purpose and design of the Addicks and Barker Dams make the court-ordered easement necessary. Colonel Timothy Vail, the commander and district

engineer for the Corps' Galveston district, testified that the dams' purpose is to impound water upstream before it flows downstream and floods downtown Houston. Tr. 1311:13-22 (Vail). Because the dams' storage capacity exceeds government-owned land, operating the dams as planned under certain meteorological conditions entails a risk to upstream private property, human health and safety, and public infrastructure. Tr. 1317:16 to 1318:8 (Vail). As the dams currently exist, the government can account for this risk to upstream properties from peak reservoir pool elevations only by acquiring an interest in the properties. See PX-JC773 at 8."

See ECF 581, Opinion and Order, Page 4.

The court held that "As the dams currently exist, the government can account for this risk to upstream properties from peak reservoir pool elevations only by acquiring an interest in the properties." This view obviously conflicts with the above-mentioned provisions of the US Code of Flood Control. The admitted evidence cited by the court in this regard is PX-JC 773, it is Weber Public Meeting Slides, but the un-confidential part of the court transcript involving the testimony of Colonel Vail cannot find the record of PX-JC 773. Does the content of the public meeting need to be kept confidential? What on earth did the uniformed gentleman say that caused the court to make the United States bear the cost of increasing the conservation capacity in the federal flood-control reservoirs? It is local interests' duty, of which is proved in the Flood Control Act of 1954 and 33 US Code, 15, § 701h together. There is no doubt that this is the fraud, wrong, or injustice to be done to the United States!

There were too many false statements and too many factual fabrications in the trial of the bellwether cases, and even the relevant Congress Act also was deliberately omitted during the trial. Cheating the court is senseless and shameful; the resulted judgment cannot stand the test of time; the judgments to the six bellwether cases should be remanded for retrial.

Fourth, the pro se plaintiffs file that motion for re-clarification in order to oppose the permanent flowage easement judgment because they have no other way to protect themselves and all victims of AB upstream - tens of thousands of families and tens of thousands of people - from

the injury caused by the bellwether cases' judgment, rather than to essentially challenges the CMO.

As a group case like the AB flood taking cases, based on the same facts and with the same consequences, it should adopt the bellwether mode. But using the bellwether model needs to prevent litigation fraud, of that it needs to prevent the bellwethers from leading the whole group case astray, for ignorance or other purposes. Unfortunately, it seemingly happened in this bellwether trial, most likely has happened.

Generally, in this case, in order to oppose this judgment of taking the permanent flowage easements on the human habitat, it would be more appropriate for pro se plaintiffs to appeal as amicus curiae. However, as early as October 15, 2018, the court denied the pro se plaintiffs' motion for obtaining discovery documents. This order misinterprets the discovery right in the litigation process - a negative right - as a positive right that needs to claim form the co-lead counsel. Therefore, the pro se plaintiffs could not claim in the appeal that the judgment of the trial court to the bellwether cases lack the support of the evidence of the major facts, for lack of records.

Therefore, the pro se plaintiffs only can file a motion for re-clarification, to remind the court that the bellwether case has gone astray. The pro se plaintiffs also understand that the motion would be granted is impossible because the granting would require extensive fact-finding.


In short, with the utmost respect to the judiciary and just, the Court should reconsider its ruling, considers and process that motion according to the RCFC 62.1 and FRAP 12.1, states it raises a substantial issue, and then - **Notice to the Court of Appeals**.

## CONCLUSION

For the reasons stated above, the Court should re-consideration the pro se plaintiffs' motion for re-clarification, and proper process it.

February 7, 2023

Respectfully submitted,

By: Zheng Luo

By: Ligang Lei

By: Huajing Yang

By: Shuyan Qiu

By: Yuanwei Lao

By: Yan Xu

By: Qingsong Shi